[Civ. No. 13333. First Dist., Div. Two. Nov. 15, 1946.]

SAMUEL M. STERN et al., Petitioners, v. THE SUPERIOR
COURT OF ALAMEDA COUNTY et al., Respondents.

Lewis F. Lercara and Leslie C. Gillen for Petitioners.

Ralph E. Hoyt, District Attorney, Folger Emerson, Assistant District Attorney, and Cecil Mosbacher, Deputy District Attorney, for Respondents.

GOODELL, J.—The petitioners seek a writ of mandate to compel the respondents to order the return to petitioners of $50,000 in currency seized under a search warrant issued in a criminal proceeding pending in the respondent superior court. An alternative writ was issued, returnable on November 12, 1946, and the matter was heard on that day and the next, and submitted.

On August 23, 1946, a lieutenant of the Oakland Police Department made an affidavit for a search warrant wherein he deposed that on August 20, 1946, Samuel M. Stern and Maurice F. Stock had performed an abortion on each of two women, naming them, in violation of section 274 of the Penal Code, and in which affidavit he stated generally the means used. He further deposed that he had just, probable and reasonable cause to believe that there were then in the possession of Stern and Stock in safe deposit box 3076 in the Central Bank in Oakland (said box standing in the names of Daniel and Katherine Reid), "certain articles, records and property which were used as a means of committing said offense; that said articles, records and property will be needed as evidence in the prosecution of said offense," and that they were "described particularly as follows, to wit: certain rec-

ords, reports, day books, diaries, account books, correspondence, memoranda or other evidence and any and all other writings to, from, concerning or containing reference to the said [two women] and to any other person or persons upon whom the said Samuel M. Stern and the said Maurice F. Stock did procure, or attempt to procure a miscarriage, . . ." The affidavit also contained statements relating to the means of committing the alleged abortions, not material here, to "establish the existence of grounds for the issuance of a search warrant" and it prayed "that a search warrant issue commanding that an immediate search be made of the . . . safety deposit box described herein, for the articles, records and property above described and that the same be brought before a magistrate and disposed of according to law."

On the same day a search warrant was issued by Honorable S. Victor Wagler, as judge of the superior court, reciting the filing and contents of the affidavit, and continuing:

"That there were used by the said Samuel M. Stern and Maurice F. Stock, and that it is intended that there be used as a means of committing said abortions, the following described articles and property: Certain medical certificates, records and correspondence pertaining to said medical certificates, in the name of Samuel M. Stern and Maurice F. Stock, certain records, reports, day books, diaries, account books, correspondence, memoranda, other evidence, and other writings to or from, concerning or containing a reference to the said [two women, naming them] and other persons upon whom said abortions were performed.

"That there is just, probable and reasonable cause to believe that the above articles and property are now concealed in a safety deposit box, commonly known as Box No. 3076, in the name of Daniel Reid and Katherine Reid in the Central Bank" and in another safe deposit box not material here.

The warrant commanded any sheriff, constable, marshal or policeman "to make immediate search of the safety deposit boxes hereinabove described for the said articles and property, and if you find the same or any part thereof to bring it forthwith before me for disposition according to law."

A return was made by the lieutenant of police showing that on August 23 he searched box 3076 (standing in the names of Daniel and Katherine Reid) and discovered and took therefrom the following property:

"*Item 1:* Fifty Thousand Dollars ($50,000.00) in lawful money of the United States of America," consisting of 99 $10. bills; 1,273 $20 bills; 185 $50 bills; 138 $100 bills, and 1 $500 bill.

"*Item 2:* Five currency wrappers bearing figures and marks in ink.

"*Item 3:* Twenty-two white paper envelopes bearing figures and writing in pencil and ink."

On August 30 the district attorney of Alameda County filed an affidavit with the superior court showing that he was prosecuting an action entitled *People* v. *Samuel Stern, Maurice F. Stock* and five other defendants under indictment for violations of section 274, and was assisting the grand jury in the investigation of Stern and others, and that in the prosecution of said action and in order to properly present the matter before the grand jury he should have access to the property seized pursuant to the search warrant, namely the $50,000 already described, the 5 wrappers and the 22 envelopes, all of which property he deposed "is now in the possession of the above-entitled court." The affidavit prayed for an order that said property be delivered to the district attorney in his official capacity "to be used as evidence in the above-mentioned criminal action and in the above-mentioned matter and in any further proceedings arising therefrom, and thereafter to be returned to this Court when no longer required in said criminal action and said Grand Jury investigation."

An order was made on the same day by Judge Wagler permitting the use of said money, wrappers and envelopes, and a receipt therefor was given by the district attorney and filed.

On September 6, 1946, an ex parte order was made by another judge of the superior court, ordering that the $50,000, the wrappers and the envelopes be made available for use as evidence upon the trial of the action of *People* v. *Stern, Stock* and said five others "and be kept open to the inspection of both the People . . . and the said defendants pending such trial."

On September 10 another order was made by Judge Wagler. It refers to the order of September 6 (just referred to) and recites that the judge sitting in Department 3, "before whom the said criminal case hereinabove referred to is now pending, duly and regularly ordered, adjudged and decreed that the said property be made available by the undersigned Judge of

the Superior Court of the State of California, acting as a Magistrate, before the said Department No. 3 of the said Superior Court for use as evidence upon the trial of said action and be kept open to the inspection of both the People of the State of California and the said defendants pending such trial; and good cause appearing therefor, and pursuant to the aforementioned order of said Superior Court made on the 6th day of September, 1946,

"IT IS NOW HEREBY ORDEREO, ADJUDGED AND DECREED that the property described in said Exhibit 'A' and hereinabove referred to be made available by the said District Attorney of the County of Alameda, State of California before Department No. 3 of the Superior Court of the State of California in and for said County, for use as evidence upon the trial of said action."

The petition alleges that the $50,000 seized is not described in the search warrant and that the respondents are especially enjoined by law, and particularly by section 1540 of the Penal Code, to restore the $50,000 to the persons from whom it was taken. It further shows that on September 4 petitioner Stern filed a motion for the return of said property which motion was heard and denied on September 6.

It alleges that petitioner Stern is under indictment by the grand jury of Alameda County; that Katherine Reid is his wife, and Daniel Reid his son; that the $50,000 cannot serve any purpose that petitioners' receipt therefor could not serve "and the retention thereof deprives petitioners of their right and ability to prepare said Stern's defense" but that the district attorney threatens to use the $50,000 as evidence upon the trial unless restoration be ordered. The petition alleges that the petitioners are beneficially interested therein and that they have no plain, speedy or adequate remedy in the ordinary course of law.

The respondents filed three identical returns. In their answers they make certain denials for want of information or belief, but practically all the denials are addressed to the allegations of the petition relating to the duty of respondents to restore the money, or other similar legal questions. It may safely be said that the only issue of fact raised by the answers is as to the petitioners' allegation that Katherine Reid is the wife of petitioner Stern and that Daniel Reid is his son. Those relationships are denied for want of information or belief.

The issues of law raised by the return—and they are numerous—will be discussed presently.

The petitioners' position may be briefly stated. It is simply this: section 19 of article I of the Constitution of California provides that the sworn showing required for the issuance of a search warrant must particularly describe the things to be seized; section 1525 of the Penal Code likewise requires that the affidavit must particularly describe the property; section 1540 requires the magistrate to cause the property to be restored to the person from whom it was taken if the property taken is not the same as that described in the warrant, and that, in the instant case neither the $50,000 nor currency in that amount, nor any money whatever, was described in the affidavit or in the search warrant, but the $50,000 was taken, nevertheless, and should be restored.

The principal ground urged by the respondents at the hearing was that none of them can be under a duty to restore in the absence of proof of the ownership of the money and that at the hearing of the motion for restoration on September 6 before Judge Wagler no such proof was made.

The affidavit which Lieutenant Wells presented to Judge Wagler on August 23 laid the foundation for the search warrant. A copy of it is attached to and made part of the petition. The answer not only expressly admits its contents but affirmatively alleges that the affidavit was made. Hence there is no controversy whatever over the affidavit or its contents. It is in the record by the pleading of both sides.

Therein Lieutenant Wells deposes "that there are now in the possession of the said Samuel M. Stern and the said Maurice F. Stock in a safety deposit box number 3076 in the Central Bank . . . said box being in the name of Daniel Reid and Katherine Reid" the articles sought.

This alleges directly and in express terms Stern's possession. It likewise alleges the Reids' possession by stating that the box stands in their names. Possession, then, by Stern and the two Reids is definitely asserted.

Section 1963 provides that "All other presumptions are satisfactory, if uncontradicted. . . . The following are of that kind: . . . 11. That things which a person possesses are owned by him; . . ."

Ever since Lieutenant Wells' affidavit was laid before Judge Wagler on August 23 that has been before the court. At the time of the motion before Judge Wagler on Septem-

ber 6 this, certainly, was the state of the record and it was sufficient evidence of the petitioners' title without any further showing.

The search warrant itself recites that the box stands in the name of Katherine and Daniel Reid and the return shows that the $50,000 was discovered in, and taken from, a box standing in their names.

At the hearing an amendment of the petition was allowed over the respondents' objection which alleges—as the original petition did not—that petitioner Stern was and is the owner of the money with right of possession thereof and that Katherine and Daniel Reid are the tenants of box 3076 from which it was taken.

At the hearing petitioners offered in evidence an affidavit of petitioner Stern setting forth that he was on August 23, 1946, and now is, the owner of the money and entitled to the possession and disposition thereof; also an affidavit of Katherine Reid in corroboration thereof; also an affidavit of Leslie C. Gillen, one of petitioners' counsel, identifying the transcript of the proceedings of September 6 on the motion for restoration before Judge Wagler.

Counsel for respondents made no objection to the transcript, but did object to the admission of the three affidavits. Later the objections were withdrawn in part and the three affidavits were admitted. Their admissibility is questionable but we do not consider the matter important as we are prepared to hold that, disregarding the affidavits entirely, the evidence before the respondents—based on the presumption of ownership flowing from possession—was all one way and we base our decision on this phase of the case solely on that proposition and not at all on the affidavits.

What has just been said answers the respondents' contentions that the petition did not allege facts—as distinguished from conclusions—showing that petitioners are parties beneficially interested (Code Civ. Proc., § 1086); also that Stern, when he moved for a return of the money on September 6 was not a party beneficially interested. If he was an owner of the money with the Reids, or the sole owner thereof, he certainly was a party beneficially interested.

It also disposes of the only issue of fact remaining in the case, namely whether Katherine Reid is the wife and Daniel Reid the son of petitioner Stern. If Katherine and

Daniel Reid were owners it would not matter whether they were related to Stern or not. Even if they were *not* owners, their possessory right as tenants of the box would make them parties beneficially interested.

■ Another point relied on by respondents is that the petitioners have a plain, speedy and adequate remedy at law. At the hearing counsel for respondents suggested that such other remedy would be found in an action at law in claim and delivery to recover the $50,000—in specie. Assuming that an action could be maintained to recover currency which is not ear-marked or identifiable (which is doubtful, see 5 Cal.Jur. p. 160, § 3) it is clear that they could not sue the respondent superior court, nor a judge or judges thereof. If driven to an action against the county clerk they would be met at once obviously with the defense that the money was in *custodia legis*. No other remedy was suggested by the respondents.

■ By way of demurrer the petition is claimed to be uncertain, ambiguous and unintelligible in that it cannot be ascertained therefrom in whose possession, custody or control the $50,000 now is—whether in evidence in *People* v. *Stern et al.* or in evidence before the grand jury. Further, whether it is in the possession of the respondent superior court, or Judge Wagler as a judge thereof, or Judge Wagler as a magistrate, or any of the respondents.

No authority need be, or will be, cited on the settled rule that when facts are within the knowledge of defendants they cannot assert uncertainty. The respondents know ''where or in whose possession, custody or control the $50,000.00 . . . now is.'' But, over and above that, the district attorney's affidavit already quoted, which is an exhibit to the petition and part of it, shows that it is ''in the possession of the above-entitled [Superior] Court.'' It was to that court that the district attorney applied for its temporary use before the grand jury, and in the prayer of the affidavit he shows that it is ''to be returned to this [Superior] Court.'' Judge Wagler's order of August 30, likewise part of the petition, shows that the property is to be delivered to the district attorney ''subject to the further orders of this Court.'' The order of September 6 likewise part of the petition shows the superior court was exercising control over the money and Judge Wagler's order of September 10 (already quoted) shows that he was then exercising control over it, and turning it over to Department 3.

At the hearing is was brought out that the money is at present in the physical custody of the county clerk of Alameda County. The claim is made, however, that it is in his hands not as ex officio clerk of the superior court, but as ex officio clerk of the grand jury. This is rather difficult to follow, particularly in view of the order of September 10 allocating it to Department 3 for use in the trial.

In their second defense the respondents plead that ever since September 3 it has been and is now impossible for Judge Wagler to restore the $50,000 and that he "will continue to be unable to comply with any order, judgment decree or mandate purporting to command or order him to do so" because ever since September 3 the money "has been out of his possession and custody and not subject to his control." On September 6 he heard and acted on the motion for restoration and on September 10 he signed the order already quoted making the money "available by the said District Attorney of the County of Alameda . . . before Department No. 3 of the Superior Court . . . for use as evidence upon the trial" of the criminal case. Moreover, if it was his duty to restore the money as soon as he learned it had been improperly seized, that duty still rests on him.

In their third defense the respondents plead that at no time prior to the filing of the petition in this court on October 9 was there a demand for the restoration of the money, and that the petitioner Stern did not at any time prove his ownership of the money.

On September 4 a notice of "Motion for return of property" signed by the attorneys of record for petitioner Stern was served on the district attorney, after the hearing had been set by Judge Wagler for September 6. It showed clearly the grounds on which the motion would be made. On September 6 the motion was presented to Judge Wagler, an assistant district attorney representing the People at the hearing. A transcript of the proceedings is in evidence in this proceeding. It shows that Stern's counsel clearly brought to Judge Wagler's attention the reasons for the restoration of the money, which are the grounds urged here, namely that no money was described in the affidavit with particularity or at all. Such motion, formally made, would seem to be such demand. With respect to proof of ownership Judge Wagler then had in the files of the court the affidavit alleging posses-

sion, therefore presumptive ownership, as we have already pointed out.

We might add that the answer herein pleads that prior to the hearing on September 6 the deputy district attorney "served" on Judge Wagler a copy of the order of the same day, already referred to, which had been made by a brother judge sitting in Department 3, and it would seem that the respondents are now relying upon that order as of some significance because it was signed by a judge of the superior court sitting in a trial department and "served" on another judge of the same court who happened, also, to have signed the warrant acting as a magistrate. Such orders are merely intermediate orders (see *De la Beckwith* v. *Superior Court,* 146 Cal. 496, 499 [80 P. 717] where the subject is fully discussed). The superior court is, after all, but one court.

The respondents urge that "Mandamus will not issue where its enforcement tends to violate the spirit of the law." Under that head they argue that the $50,000 is valuable to the People as evidence in the pending criminal action and is at the present time in evidence in the grand jury as an exhibit in its investigation.

It might be remarked that the fact that petitioners had $50,000 in currency in the denominations already shown in a safe deposit box can be proved at the trial (if admissible) by the person or persons who actually took the currency from the box. Exhibiting it to the jury is not necessary to prove the fact, if it is admissible at all.

While our courts have held that evidence illegally obtained may be admitted in evidence, there can be no justification for any court abusing its own process to secure the production of evidence in plain violation of the constitutional and statutory guarantees against illegal searches and seizures.

The petitioners allege that the retention of this money deprives them of their right and ability to prepare Stern's defense. This is an immaterial allegation. The petitioners either are, or are not, entitled to a restoration of the money as a matter of right, regardless of the use to which they might put it.

The constitutional guaranty respecting searches and seizures (Cal. Const., art. I, § 19) is as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be

violated; and no warrant shall issue, but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

Section 1525 adopts the constitutional language respecting a particular description of the property. It reads as follows:

"A search-warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched."

The affidavit on which the search warrant was issued describes the property sought as follows: "Certain articles, records and property which were used as a means of committing said offense; . . . That the said articles, records and property are described particularly as follows, to-wit: certain records, reports, day books, diaries, account books, correspondence, memoranda or other evidence and any and all other writings to, from, concerning or containing reference to the said (two women, naming them) and to any other person or persons upon whom the said Samuel M. Stern and the said Maurice F. Stock did procure, or attempt to procure a miscarriage. . . ."

It is perfectly clear that there is no mention whatever of the currency in question, or of any money at all.

The search warrant describes the articles sought as follows: "Certain medical certificates, records and correspondence pertaining to said medical certificates, in the name of Samuel M. Stern and Maurice F. Stock, certain records, reports, day books, diaries, account books, correspondence, memoranda, other evidence, and other writings to or from, concerning or containing a reference to the said (two women, naming them) and other persons upon whom said abortions were performed."

No money is described therein.

 Section 1540 of the Penal Code carries out the constitutional assurance by providing for a return to the citizen of property improperly taken from him under color of a search warrant as follows:

"*Property, when to be restored to person from whom it was taken.* If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken."

It does not put the burden on the citizen of suing to get the property back. It makes it the duty of the magistrate to see to its restoration by a mandatory "must." There is no discretion about it. Upon ascertaining that the property taken is not that described in the warrant—and it is not difficult to do that—he must not *order* its return, but must "cause it to be restored." Further, the statute says nothing about ownership, it deals only with possession.

It was the plain duty of the magistrate in this case to have caused the $50,000 to be returned to box 3076 as soon as the lieutenant's return and inventory showed him that it had been taken therefrom. And it has been his duty to do so ever since.

The respondents do not contend that the money was described under the words "or other evidence" nor could such claim be made. (*People* v. *Mayen*, 188 Cal. 237, 242 [205 P. 435, 24 A.L.R. 1383].)

In addition to what has been said it is clear that the money taken was not within the terms of section 1524 which states the cases in which a search warrant will issue, as follows:

"It may be issued upon either of the following grounds:

"2. When it was used as the means of committing a felony; in which case it may be taken on the warrant from the place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or from any person in whose possession it may be.

"3. When it is in the possession of any person with the intent to use it as a means of committing a public offense. . . ."

The petitioners have shown a clear and definite right to a writ in this case.

It is therefore ordered that a peremptory writ of mandate issue directing the respondents, and each of them, to forthwith cause to be returned and restored to these petitioners, the $50,000 taken from them on August 23, 1946, under said search warrant which money is described in the inventory filed with the return in the respondent superior court.

Nourse, P. J., and Dooling, J., concurred.