[Civ. No. 30840. First Dist., Div. One. Aug. 24, 1972.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
RAYMOND MARCIL, Real Party in Interest.

## COUNSEL

Louis P. Bergna, District Attorney, and Ulysses C. Beasley, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Mannina & Tambling and Harrett W. Mannina for Real Party in Interest.

## Opinion

**SIMS, J.**—The People of the State of California petitioned for a writ of mandate directed to respondent court to set aside its order suppressing certain evidence pursuant to Penal Code section 1538.5. An alternative writ of mandate was issued by this court directing respondent to show cause why it should not be compelled to set aside its order. The People contend that all eight items set forth in an inventory of property taken pursuant to a search warrant were properly seized under that warrant. In defense of the ruling of the trial court, the real party in interest asserts that the five items suppressed,[1] in response to his motion to suppress all of the evidence received, were illegally seized because the affidavit in support of the search warrant did not furnish probable cause for the insertion in the search warrant of provisions which are relied upon to justify the search for and seizure of such items, and because that search and seizure cannot be upheld as ancillary to any search properly authorized by the warrant.

It is concluded that the magistrate's power to draw proper inferences from the facts before him warrants the conclusion that there is probable cause to believe that a person to whom almost 4 pounds of contraband is shipped from abroad may have other contraband in his possession, and that the shipment itself gave probable cause to believe that the consignee would have in his possession correspondence and other evidence which would reflect the part played by the consignor and the consignee in the illegal transaction. The discovery of the other contraband may therefore be also warranted as part of a proper search for such evidence, even though the warrant was otherwise deemed overbroad. The ruling of the trial court also raises questions of conflict between federal and state interpretation of the Fourth Amendment which the upholding of the search renders it unnecessary to pursue.[2] It also suggests that the principle

---

[1] Although real party in interest seeks to attack other items as to which his motion was denied he may not now seek a review of the trial court's denial of his motion to suppress as evidence items 1, 2 and 3. If he desired a review prior to trial of the trial court's order denying his motion to suppress these items after the special hearing held in the superior court, he was required to do so by means of an extraordinary writ of mandate or prohibition filed within 30 days after his denial of his motion with respect to these items at the special hearing. (Pen. Code, § 1538.5, subd. (i).) This he failed to do. Moreover, insofar as item 2 is concerned, real party concedes that it was properly seized pursuant to the subject search warrant.

[2] In this case a federal magistrate presumably familiar with the administration of the custom laws of the United States accepted the custom special agent's statement reading: "It has been Customs experience and my personal experience in a number of similar investigations in which I have participated that additional types and quantities of narcotics, narcotic paraphenalia [sic] and correspondence are often

of *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] restricts the scope of what may be particularly described in a search warrant, or, alternatively, restricts the scope of the search for that which is properly particularly described. *Chimel,* however, suggests that when the accused is found in possession of contraband and arrested a further search may be warranted "under the authority of a search warrant." (395 U.S. at p. 763 [23 L.Ed.2d at p. 694].)

A United States magistrate issued a search warrant on July 16, 1971, upon the affidavit of Charles L. Deatrick, a special agent of the United States Customs, in which the affiant stated that he had reason to believe that certain property, which is "the fruits and instrumentalities of a violation of 21 USC 952," . . . "will be concealed" in a "single story, single family residence, being of stucco construction, green in color, having a detached garage, lying on the west side of Raymond Avenue between the intersections of Scott Street and Basile Avenue, in the County of Santa Clara, State of California, including all outbuildings and appurtences." The said property was described as follows: "1. One mail parcel addressed to Mr. Raymond Marcil, 523 Raymond St., San Jose, California, 95128 and containing approximately three pounds fourteen ounces of marihuana. 2. Other hashish, marihuana, narcotics or narcotic paraphenalia [*sic*]. 3. Correspondence relating of smuggling hashish, marihuana or narcotics. 4. Or the means and instruments used in violation of 21 USC 952."[3]

The said affidavit stated, further, that a customs employee, Juan Guerrero, discovered a mail parcel arriving from outside the continental

found in or on the premises where controlled deliveries of smuggled marihuana or narcotics have been made." If the real party in interest had moved to suppress the other narcotics, and for the return of other material in that court, it is conceivable that the federal courts would have upheld the seizure. (Note, *United States* v. *Harris* (1971) 403 U.S. 573 [29 L.Ed.2d 723, 91 S.Ct. 2075], and subsequent changes in the personnel of the court.) If the search in question were so approved, the rejection of a "silver platter" doctrine would not either serve the integrity of the state court, because no illegal act was involved, nor would it serve to deter future similar acts in customs cases. (Cf. *People* v. *Keener* (1961) 55 Cal.2d 714, 722 [12 Cal.Rptr. 859, 361 P.2d 587].) Comity may indicate that real party in interest should have first exhausted his federal remedies.

[3]It is undisputed that the designation "21 USC 952" appearing in both the search warrant and the affidavit for the search warrant has obvious reference to title 21, Food and Drugs, of the United States Code Annotated. Section 952 of title 21 provides that it is unlawful to import into the customs territory of the United States from any place outside thereof any "controlled substance" or "any narcotic drug." The term "controlled substance" includes marijuana and "LSD," and the term "narcotic drug" means opium, cocoa leaves, opiates, compounds of these substances and compounds chemically identical with such substances. (See 21 U.S.C.A. §§ 802, 812.)

United States and containing approximately 3 pounds 14 ounces of a substance resembling marijuana; that Guerrero transmitted this information to affiant; that the parcel was addressed to Mr. Raymond Marcil, 523 Raymond Ave., San Jose, California, 95128, and "bore the return address of Jeff Marcil, TM 96 Drac Engineers, APO SF 96215"; that a sample of the substance taken from the parcel was chemically analyzed to be marijuana by David Chia, the customs chemist who submitted a laboratory report; that the parcel was forwarded to the postal authorities for delivery to the address "under controlled conditions"; and that the search warrant would not be executed until confirmation was received that the parcel had been delivered to the designated address.

The affidavit also contained the following statement: "It had been Customs experience and my personal experience in a number of similar investigations in which I have participated that additional types and quantities of narcotics, narcotics paraphenalia [*sic*] and correspondence are often found in or on the premises where controlled deliveries of smuggled marihuana or narcotics have been made."

The search warrant issued pursuant to said affidavit described the premises to be searched and the property to be seized in language identical to that contained in the affidavit.

On the same day that the search warrant was issued, at about 4:15 p.m., Deatrick and three deputy sheriffs of Santa Clara County went to the premises at 523 Raymond Avenue in San Jose together with a postal carrier. The carrier delivered the aforementioned parcel to Raymond Marcil, real party in interest. Subsequently, at about 5:40 p.m., the officers went to said premises. Upon being admitted into the residence they served Marcil with a copy of the search warrant. Marcil read it and stated: "I know what you are here for, I know what you are looking for . . . I will show you where it is in the closet." Deputy Perovich then followed Marcil into a bedroom where he observed on the floor of a closet the parcel that had been previously delivered to Marcil by the postal carrier. The package had been opened. It contained approximately 1 pound of loose marijuana.

Marcil was then placed under arrest and taken to the kitchen area where he was advised of his rights. Perovich advised Marcil that he was going to search the bedroom. The officers then proceeded to search the bedroom where deputy Breen found a wooden box near the headstand of the bed. The headstand was approximately 5 to 10 feet from the bedroom closet. Breen opened the box. It contained four plastic bags each containing a

substance identified as marijuana and some orange pills. The officers also found $160 in the room and certain letters addressed to Marcil by his brother who was in the Army in Vietnam.

The return to the search warrant described the items seized in the search as follows: "1. Piece of broken Buddha. 2. Mail parcel described on warrant, containing marihuana. 3. (9) letters. 4. (4) money order receipts & (1) shipping receipt. 5. Plastic bag containing clay & vegetable matter. 6. Small wooden box with 4 baggies, cigarette hand roller, package of zig zag papers, box of prophylactics. 7. Green box containing (3) package of orange tablets. 8. Money—(2) $50.00 & (3) $20.00 = total $160.00."

Real party's motion to suppress pursuant to section 1538.5 was submitted on the testimony adduced and exhibits introduced in evidence at the preliminary examination in the course of which real party's counsel stipulated that the substance contained in the mail parcel was marijuana and that the orange pills found in the wooden box were LSD. Although there was no stipulation as to the nature of the substance found in the plastic bags, deputy Perovich testified without objection that the substance in each of the bags was marijuana. The motion to suppress was denied by respondent court as to items numbered 1, 2 and 3 in the return to the search warrant and was granted as to items numbered 4, 5, 6, 7 and 8 in said return.

## I

In *United States* v. *Ventresca* (1965) 380 U.S. 102 [13 L.Ed.2d 684, 85 S.Ct. 741] the prevailing opinion states: ". . . the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying

circumstances' upon which that belief is based. [Citation.] Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. [Citation.]" (380 U.S. at pp. 108-109 [13 L.Ed.2d at pp. 688-689]. See also *United States* v. *Harris* (1971) 403 U.S. 573, 577 [29 L.Ed.2d 723, 730, 91 S.Ct. 2075]; and *People* v. *Superior Court* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183].)

It is important to consider that in reviewing the sufficiency of the affidavit for the search warrant both the trial court and this court are bound by the magistrate's appraisal of the evidence before him unless it is legally insufficient. In *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485] the court observed, "While it is clear that probable cause does not require as strong evidence as is needed to convict [citation], the exact quantum of evidence which will constitute probable cause must be judged in light of the facts and circumstances of each case. The rules of appellate review recognize the impracticality of establishing a precise calculus by which the existence of probable cause is to be determined: the warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony. [Citations.]" (1 Cal.3d at p. 150. See also *People* v. *Benjamin* (1969) 71 Cal.2d 296, 302 [78 Cal.Rptr. 510, 455 P.2d 438]; *People* v. *Stout* (1967) 66 Cal.2d 184, 193 [57 Cal.Rptr. 152, 424 P.2d 704]; *People* v. *Johnson* (1971) 21 Cal.App.3d 235, 243 [98 Cal.Rptr. 393]; and *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 869-870 [34 Cal.Rptr. 251].)

II

In applying the above principles the trial court, and the magistrate all properly found that the affidavit set forth probable cause to believe that "One mail parcel addressed to [real party in interest] and containing

approximately three pounds fourteen ounces of marihuana" would be located at the premises designated in the warrant. The fact that the delivery of that contraband was prospective did not defeat the efficacy of the affidavit or the search warrant itself. (See *Alvidres* v. *Superior Court* (1970) 12 Cal.App.3d 575, 580-583 [90 Cal.Rptr. 682]; and note *Draper* v. *United States* (1959) 358 U.S. 307, 312-313 [3 L.Ed.2d 327, 331-332, 79 S.Ct. 329].)

## III

The warrant further authorized search for "Other hashish, marihuana, narcotics or narcotic paraphenalia [*sic*]." It is asserted that the conclusion-ary statements of the agent that "additional types and quantities of nar-cotics [and] narcotic parephenalia [*sic*] . . . are often found in or on the premises where controlled deliveries of smuggled marihuana or narcotics have been made" fails to furnish probable cause for the broad description in the search warrant. It is not, however, the agent's conclusions which control, but the fact, established by other allegations, that the consignee is to receive contraband at that address, which must furnish the inference that there is probable cause to believe other contraband will be present. That such an inference is not inherently unsatisfactory may be demon-strated by the situation if the officers had proceeded to arrest the defendant when he received the package without a warrant. Under *Chimel* v. *Cali-fornia, supra,* 395 U.S. 752, further search of the premises could not be conducted on the basis of the arrest. Nevertheless the officers could have staked out the premises and sought a warrant on the same theory as the warrant of additional breadth was originally sought here.

The propriety of the issuance of the warrant is not a question of proof of guilt beyond a reasonable doubt, or by a preponderance of the evidence, but "a balancing of probabilities." (See *United States* v. *Harris, supra,* 403 U.S. at p. 579, fn. [29 L.Ed.2d at p. 731].) It depends on ". . . the factual and practical considerations of everyday life on which reason-able and prudent men, not legal technicians, act." (*Brinegar* v. *United States* (1949) 338 U.S. 160, 175 [93 L.Ed. 1879, 1890, 69 S.Ct. 1302]. See also *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 150.) A reason-able and prudent magistrate could infer that the consignee of contraband mailed from outside the United States would know that he was party to an illegal transaction and that, branded with such knowledge, it is reason-able to infer that the consignee possesses other contraband of foreign or domestic origin. The argument that like junk mail, four-pound packages of marijuana are shipped from overseas at random to innocent consignees who have neither solicited nor been a knowledgeable party to the ship-

ment or receipt of such goods should be rejected as unworthy of consideration. ■ The fact of receipt and delivery of the four pounds of marijuana not only justified the special agent's conclusion, but also permitted the magistrate himself "to entertain a strong suspicion of the guilt of the accused" (see *Skelton* v. *Superior Court, supra,* 1 Cal.3d at p. 150) with respect to the possession of other contraband.

In *People* v. *Johnson, supra,* the court stated, "The question here presented is whether the affidavit presented in support of the search warrant for defendants' residence was adequate to support the magistrate's conclusion that reasonable cause existed to believe that yet more contraband would be found at that residence." (21 Cal.App.3d at p. 243.) In answering that question in the affirmative the trial court noted that the drugs found on the legal search of other premises under the control of the defendant were of such quantity as to indicate that the defendant was a major supplier of drugs in the area. Concededly no such factor is present here. Nevertheless, it was established that the real party in interest was at one end of the importation of drugs, an offense of greater magnitude than the casual possession of a marijuana cigarette for use. The court also considered the officer's opinion as follows: "Secondly, and significantly, the officer related that his experience in the field had provided him with knowledge of the habits and modus operandi of suppliers of illegal drugs. Of importance here is the statement of the officer that such persons routinely maintain their major stockpile away from their residence and a smaller quantity at or near their residence for the purpose of immediate sale.

"The officer, based on this knowledge, swore to an honest belief that additional drugs would be found at defendants' residence. The magistrate entertained a similar belief. We are of the opinion that that belief was reasonable.

"No contention is made that the officer lacked expertise. It is a matter of common knowledge that in California, officers of the major police and sheriffs' departments receive intensive training in narcotic enforcement. Officers assigned to that specialty, as this officer appears to have been, spend much of their time studying the habits and methods of persons engaged in illegal narcotic traffic.

"This is not to say that a search warrant may be based solely upon a generalized statement of opinion by an officer concerning a defendant's suspected criminal activity. [Citation.]

"On the other hand a magistrate, in deciding whether or not to issue

a search warrant, can consider competent and relevant opinion evidence bearing on the issue of probable cause . . . .

"The test of probable cause 'should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes.' *(People* v. *Williams,* 196 Cal.App.2d 726, 728 . . . .)

" . . . . . . . . . . . . . . . . .

"Furthermore, the officer here did not act upon his own opinion but presented it to a magistrate for his evaluation, an action which the exclusionary rule is designed to encourage. [Citation.]

" . . . . . . . . . . . . . . . . .

"The officer's extrapolation from the known facts of the previous search through his personal experience and expertise to his ultimate opinion was legally competent and factually persuasive.

" . . . . . . . . . . . . . . . .

"The officer's opinion was competent, relevant evidence which when coupled with the equally competent and relevant evidence of the circumstances of the previous seizure constituted quantitatively sufficient support for the magistrate's finding." *(Id.,* pp. 243-245, *passim.)* So here the magistrate did not have to disregard the officer's opinion predicated upon his experience, and based on the established fact that real party in interest was the consignee of a shipment of contraband.

Numerous cases have upheld search warrants on the theory that one who sells narcotics may have more at his residence or place of operations. (See *People* v. *Wilson* (1968) 268 Cal.App.2d 581, 588-589 [74 Cal.Rptr. 131]; *People* v. *Walker* (1967) 250 Cal.App.2d 214, 218-220 [58 Cal. Rptr. 495]; *People* v. *Tillman* (1965) 238 Cal.App.2d 134, 138-139 [47 Cal.Rptr. 614]; and *People* v. *Layne* (1965) 235 Cal.App.2d 188, 190-192 [45 Cal.Rptr. 110].) Searches likewise have been upheld where there was circumstantial evidence of the presence of obscene matter or of the instrumentality with which a crime was committed. (See *People* v. *Golden* (1971) 20 Cal.App.3d 211, 217-218 [97 Cal.Rptr. 476]; and *People* v. *Alvarado* (1967) 255 Cal.App.2d 285, 291 [62 Cal.Rptr. 891].) In

*People* v. *Layne, supra,* the court observed, ". . . the affidavit supported the conclusion that persons entering the subject residence were obtaining narcotics therein, supporting the inference that those in occupancy thereof were in possession of narcotics." (235 Cal.App.2d at p. 192.) In *People* v. *Golden, supra,* Kaus, P. J., in dissenting noted, "We have all handled enough narcotics cases and thus gained knowledge of the habits of peddlers, that we may perhaps reasonably suspect that such a person who deals a small amount of merchandise from his home, has more where it came from. I confess to no comparable knowledge when it comes to smut, nor does the record contain any expert evidence on the point." (20 Cal.App.3d at pp. 218-219.) It is true that in this case there was no evidence of other activity on the part of the consignee. Nevertheless, the fact of importation itself, as pointed out above, supports inferences over and above those which might attend information that marijuana or other narcotics had been observed being consumed on the premises in the past. The inference drawn by the magistrate that other narcotics would be present does not appear unreasonable in this case.

## IV

In *Aday* v. *Superior Court* (1961) 55 Cal.2d 789 [13 Cal.Rptr. 415, 362 P.2d 47], the court after reviewing the constitutional and statutory requirements for a search warrant,[4] ruled that a warrant which purported to authorize a search for various types of corporate records and " 'any and all other records and paraphernalia' " connected with the corporate business of the accused was too broad to authorize the seizures of such papers at random. The court pointed out, "Articles of the type listed in general terms in the warrant are ordinarily innocuous and are not necessarily connected with a crime. The various categories, when taken together, were so sweeping as to include virtually all personal business property on the premises and placed no meaningful restriction on the things to be seized. Such a warrant is similar to the general warrant permitting unlimited search, which has long been condemned. [Citation.]" (55 Cal.2d at p. 796. See also *People* v. *Mayen* (1922) 188 Cal. 237, 241-242 [205 P. 435, 24 A.L.R. 1383].)

---

[4]Article I, section 19, of the California Constitution reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be violated; and no warrant shall issue, but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." Section 1525 of the Penal Code provides: "A search-warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched." (See also Pen. Code, § 1529 [requiring "reasonable particularity" of description].)

On the other hand, when contraband is involved a direction to seize " 'narcotics consisting of dangerous drugs, heroin and marijuana, together with paraphernalia instrumental in the use of said contraband' " has been upheld. (*People* v. *Walker* (1967) 250 Cal.App.2d 214, 220 [58 Cal.Rptr. 495], and see fn. 1, pp. 216-217. See also *People* v. *McEwen* (1966) 244 Cal.App.2d 534, 536 [53 Cal.Rptr. 362]; *People* v. *Barthel* (1965) 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290]; *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 868 [34 Cal.Rptr. 251]; and *People* v. *Daily* (1958) 157 Cal.App.2d 649, 653-654 [321 P.2d 469].) In *People* v. *Barthel, supra,* the court interpreted *Aday* v. *Superior Court, supra,* as establishing the following rule, "The test is whether the warrant places a meaningful restriction on the objects to be seized." (231 Cal.App.2d at p. 832. See also *People* v. *McEwen, supra,* 244 Cal.App.2d at p. 536.)

The package itself was particularly described in the search warrant. The next item, "2. Other hashish, marihuana, narcotics or narcotic paraphenalia [*sic*]" appears to satisfy the test of *People* v. *Walker, supra.* The issue is one of probable cause to entertain a suspicion that such contraband was present (see part III above).

"3. Correspondence relating of smuggling hashish, marihuana or narcotics," appears to satisfy the test of particularity referred to above. The questions are whether mere evidence can be seized, and whether there was probable cause to believe such evidence would be present (see part V below).

The category "4. Or the means and instruments used in violation of 21 USC 952" may well be too broad if read alone. In *People* v. *Mayen, supra,* a search warrant which described the property to be seized as "certain personal property used as a means of committing a public offense, to-wit, attempted grand larceny" was condemned as lacking in particularity (188 Cal. at p. 242). It is unnecessary to determine whether the qualifying language "which are the fruits and instrumentalities of a violation of 21 USC 952" can save the last category by linking it to the parcel. Even if it be assumed that any one category is overbroad and lacking in the requisite particularity, any thing properly seized as the result of an authorized search for articles properly described may be used in evidence. In *Aday* v. *Superior Court, supra,* the court stated, "The invalid portions of the warrant are severable from the authorization relating to the named books, which formed the principal basis of the charge of obscenity. The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles." (55 Cal.2d at p. 797.)

Attention is therefore directed to the question of whether there was probable cause to search for correspondence regarding the shipment allegedly and actually made to real party in interest as consignee.

## V

In *People* v. *Thayer* (1965) 63 Cal.2d 635 [47 Cal.Rptr. 780, 408 P.2d 108] the court ruled, "We hold that the mere evidence rule is not a constitutional standard and has no application in California." (63 Cal.2d at p. 642. See also *People* v. *McEwen, supra,* 244 Cal.App.2d 534, 535-536; and *People* v. *Potter* (1966) 240 Cal.App.2d 621, 630-631 [49 Cal.Rptr. 892].) In *People* v. *Potter, supra,* the court upheld the issuance of a search warrant to secure a check which verified the admission of one defendant that he had been paid by his codefendant, the drawer of the check. The court said, "All evidence of crime, not merely contraband, instruments or fruits of crime, may customarily be seized pursuant to a search warrant. [Citation.] The check represented some evidence of the crimes here involved inasmuch as it constituted payment for Potter's services to Wolfe in conducting the investigation of Gummere." (240 Cal.App.2d at pp. 630-631.) So here any letter from the consignor to the consignee explaining the shipment would be evidence of the consignee's complicity in the importation of the marijuana. The magistrate and the trial court apparently believed such to be the case. Despite the fact that real party in interest has not attacked the failure of the trial court to suppress the nine letters, which the return to the search warrant indicates were seized, it is suggested that the term "correspondence," without reference to the qualifying language of the warrant, is too broad. This conclusion is rejected for the reasons set forth above (see part IV, above).

It is true, however, as is the case with the other contraband, that there was no direct averment that any correspondence relating to smuggling existed. Nevertheless, the agent's conclusion, based on his experience, that correspondence (presumably relating to the smuggled contraband) is often found on the premises of the consignee is consistent with human experience. It defies reason to say that the marijuana was shipped at random to a person and address with whom the consignor had no prior relationship, and it may properly be inferred that there was written communication between the two with respect to the shipment. The magistrate was entitled to draw the same conclusion as a reasonable inference from the established facts. There was probable cause to believe that correspondence relating to the smuggling would be present. It must be assumed from the trial court's ruling that the nine letters seized did have such relevancy.

## VI

If the officers were entitled to search for correspondence the fact that this search, after the discovery of the package, turned up further contraband renders the seizure of that contraband proper. In *Skelton* v. *Superior Court, supra,* the search warrant authorized a search for four specific items of stolen property. After one item was found the residents were arrested and the search continued. It turned up numerous items identified from prior complaints as other stolen property. After finding that there was probable cause for the issuance of the search warrant (1 Cal.3d at pp. 149-154), the court examined the petitioner's contention that the search warrant "was simply a pretext to gain entry to his house, a facade behind whose authority the officers intended to conduct an extensive search of his premises to discover, not solely the four listed items, but also other stolen property which they suspected might be located there." (*Id.,* p. 154.) The court had already observed, ". . . the search seems to have been motivated not simply by a desire to locate the three remaining items specified in the warrant but also by the hope of discovering property listed as stolen on police burglary reports which the officers had brought with them." (*Id.,* p. 149.) Nevertheless the court concluded, "In the absence of such evidence [substantial evidence that the search warrant was obtained as a pretext], however, we proceed on the entirely reasonable assumption that the officers were engaged in a good faith effort to execute the warrant and discover the named property when they uncovered and confiscated the two rings, the watch, and the bottle of secobarbital capsules. Under this assumption it is well settled that, in circumstances such as those in this case, the property seized, even though not mentioned in the warrant which authorized the search, is admissible against petitioner." (*Id.* at pp. 154-155.)

In a footnote the court refers to the officers' "unquestionable authority to conduct a search of whatever intensiveness was required" for the items properly described in the warrant. (*Id.,* pp. 154-155, fn. 8.) It concluded, "When officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently, as a result of the officers' efforts." (*Id.,* p. 157. See also *People* v. *McEwen, supra,* 244 Cal.App.2d 534, 538; *People* v. *Layne, supra,* 235 Cal.App.2d 188, 191; and *People* v. *Daily, supra,* 157 Cal.App.2d 649, 654.) The rationale for the rule is stated as follows: "Here a warrant had been properly issued directing that a search be made of the entire premises occupied by petitioner. Since the warrant mandated a search for and seizure of several small and easily secreted items, the officers had the authority to conduct

an intensive search of the entire house, looking into any places where they might reasonably expect such items to be hidden. With the issuance of this warrant, the judgment had already been made by a judicial officer to permit a serious invasion of petitioner's privacy. No legitimate interest is enhanced by imposing artificial restrictions on the reasonable conduct of officers executing the warrant. No purpose is subserved, other than that of an exquisite formalism, by requiring that when the officers discovered contraband in the course of this search they return to the issuing magistrate and obtain a second warrant directing the seizure of the additional contraband." (1 Cal.3d at p. 158.)

■ From the foregoing it is concluded that even if the directive in the warrant to search for "Other hashish, marihuana, narcotics or narcotic paraphenalia [sic]" be deemed inadequate to justify the further search either because of lack of probable cause in the affidavit, or because of overbreadth, the directive to search for correspondence relating to smuggling was sustained by probable cause, and was not overbroad if construed as relating to the known package.

■ It is, therefore, determined that the trial court erred in striking the contraband found in the box by the accused's bedside which is apparently represented by "6. Small wooden box with 4 baggies, cigarette hand roller, package of zig zag papers, and box of prophylactics"; and "7. A green box containing three packages of orange tablets." Since no testimony was offered concerning the discovery or nature of "4. (4) Money order receipts & (1) shipping receipt" or "5. Plastic bag containing clay & vegetable matter," it will be assumed that they were properly suppressed because they were neither contraband, nor correspondence relating to the presumed activities of the consignee. Testimony was offered concerning the discovery of the money, but it was not related to any particular transaction. It is unnecessary to determine whether the money was within the scope of the warrant. The relevancy, materiality and competency of proof of the fact that the consignee had the sum of $160 may be considered at the trial without holding the money. Since it was neither contraband nor marked money, the owner was entitled to its return. (See *Buker* v. *Superior Court* (1972) 25 Cal.App.3d 1085, 1089-1090 [102 Cal.Rptr. 494]; and *Stern* v. *Superior Court* (1946) 76 Cal.App.2d 772, 782 [174 P.2d 34].)

For the foregoing reasons the petition is granted and a peremptory writ of mandate shall issue directing the trial court to vacate its order suppressing items 6 and 7.

Elkington, J., concurred.

**MOLINARI, P. J.**—I dissent. In my opinion the statement in the affidavit that "It has been Customs experience and my personal experience in a number of similar investigations in which I have participated that additional types and quantities of narcotics, narcotics paraphenalia [*sic*] and correspondence are often found in or on the premises where controlled deliveries of smuggled marihuana or narcotics have been made" does not supply any facts or circumstances to the magistrate upon which he can issue a search warrant. Such a statement is purely conclusionary, opinionative, and based on suspicion.

A search warrant may not properly be issued by a magistrate "unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation." (*Nathanson* v. *United States,* 290 U.S. 41, 47 [78 L.Ed. 159, 162, 54 S.Ct. 11]; *Aguilar* v. *Texas,* 378 U.S. 108, 112 [12 L.Ed.2d 723, 727, 84 S.Ct. 1509].) If the affidavit in support of the search warrant fails as a matter of law to set forth sufficient, competent evidence supportive of the magistrate's finding of probable cause it will be upset. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; *Dunn* v. *Municipal Court,* 220 Cal.App.2d 858, 869 [34 Cal.Rptr. 251].) There must, therefore, be a *substantial* basis for the magistrate to conclude that contraband was probably present in order to sustain his judicial determination that there is probable cause for the issuance of a search warrant. (*Skelton* v. *Superior Court, supra;* see *Jones* v. *United States,* 362 U.S. 257, 270 [4 L.Ed.2d 697, 707-708, 80 S.Ct. 725]; *Aguilar* v. *Texas, supra,* at p. 111 [12 L.Ed.2d at p. 726].)

In order to establish probable cause for the issuance of a search warrant the supporting affidavit must contain an affirmative allegation that the affiant speaks with personal knowledge of the matters contained therein or it must set forth any other sufficient basis upon which a finding of probable cause could be made. (*Giordenello* v. *United States,* 357 U.S. 480, 486 [2 L.Ed.2d 1503, 1509, 78 S.Ct. 1245]; *Aguilar* v. *Texas, supra,* 378 U.S. 108, 113 [12 L.Ed.2d 723, 728].) Where the affidavit is based on hearsay information "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation], was 'credible' or his information 'reliable.'" (*Aguilar* v. *Texas, supra,* at p. 114 [12 L.Ed.2d at p. 729].)

Although it is true that the credibility of the affiant is a matter for the magistrate (*Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 153-154, fn. 7 at p. 154), a magistrate is not justified in giving any weight to an asser-

tion based on mere suspicion and belief without any statement of adequate supporting facts (*Nathanson* v. *United States, supra,* 290 U.S. 41, 46-47 [78 L.Ed. 159, 161][1]), or any assertion that is merely the conclusion of the affiant, without any statement of adequate supporting facts. (*Giordenello* v. *United States, supra,* 357 U.S. 480, 486.[2]) Accordingly, mere assertions of suspicion and belief or assertions that are merely conclusions of the affiant do not suffice to establish probable cause. (*Nathanson* v. *United States, supra; Giordenello* v. *United States, supra.*)

Adverting to the affidavit in the instant case, we apprehend that Deatrick's statement that he had reason to believe that the mail parcel and its contents was about to be located on the described premises was based on adequate supporting facts. His statements concerning the mail parcel and its contents were based either on his own personal knowledge or upon reliable and credible information supplied by United States Customs officers and employees acting in the course and scope of their official employment. Accordingly, these statements formed a substantial basis for the magistrate to conclude that the contraband described as being in the mail parcel was probably present at the described premises and sufficed for the issuance of a search warrant for its search and seizure.

However, when our inquiry is directed to whether there was a substantial basis for the magistrate to conclude that the other objects of the search were "probably present" in the described premises we find that such determination stands or falls on the affiant's statement here in question. That statement is nothing more than a mere conclusion on the part of the affiant based on an assertion of suspicion and belief. When he states that "It has been Customs experience . . ." he gives none of the underlying circumstances upon which it could be determined what that experience was. At best it appears to be based on hearsay information without the benefit of the underlying circumstances that the law requires. Insofar as Deatrick's personal experience is concerned, he merely asserts that because he had "often" found narcotics other than those which were the subject of "controlled deliveries" in a "number" of similar previous investigations, such other narcotics would be found in the premises involved in the instant investigation. This is merely speculation on his part.

We perceive that the affidavit does not purport to delineate Deatrick's

[1]In *Nathanson* the affidavit merely stated that the affiant "has cause to suspect and does believe" that certain merchandise was at a specified location. (290 U.S. at p. 44 [78 L.Ed. at p. 160].)

[2]In *Giordenello* the affiant swore that the petitioner " 'did receive, conceal, etc., narcotic drugs, . . . with knowledge of unlawful importation; . . .' " (357 U.S. at p. 481 [2 L.Ed.2d at p. 1507].)

experience. It does not set out the number of previous investigations upon which his past experience may be evaluated, nor does it disclose whether the "number" of previous investigations was large or small in respect to the total number. The gist of the subject statement is that because an officer has *sometimes* found contraband in a particular type of investigation contraband will more likely be found in similar investigations than not. To hold that such a statement suffices to support the issuance of a search warrant is to invite a proliferation of search warrants whose only justification for issuance will be an officer's naked statement of past experience. Such a holding erodes the constitutional mandate that requires, subject to a few specifically delineated exceptions, not only that searches must be made with warrants, but also that such warrants must be based on affidavits containing adequate supporting facts. (See *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454-455 [29 L.Ed.2d 564, 575-576, 91 S.Ct. 2022].)

It must be pointed out that in the present case there is no evidence that real party was engaged in the narcotic traffic, that he was a narcotic user, or that he had on other occasions received marijuana through the mails. Yet the affiant presumed to say that if such a person is the addressee of a parcel containing marijuana he has more marijuana and other narcotics in his possession. This is a "lifting up by the bootstraps" argument.

I perceive, further, that there is nothing in the affidavit indicating that Deatrick is an expert upon the matters he presumed to set out in his affidavit. I do not believe that such expertise can be predicated upon an affiant's bare statement that he is a customs agent who, on some previous occasions, has found additional narcotics in a "controlled delivery" situation. Nor do I perceive him to be an expert on the "modus operandi" of those who receive contraband through the mails. No underlying circumstances are asserted that would indicate that such a recipient always works or operates in a given manner so as to qualify the affiant as an expert. Deatrick does not presume to say in his affidavit that he is an expert because, in his experience, persons in real party's category act in a certain manner, but only that because some persons in such a category have so acted on a previous occasion others are so acting. This is not a matter within the province of expertise.

The vice of the instant situation, as I view it, is that the inferences to be drawn from Deatrick's statement are those which he himself draws. The proper inferences must be drawn, however, by the magistrate acting in a "detached and neutral" capacity. (*Johnson* v. *United States,* 333 U.S. 10, 12-14 [92 L.Ed. 436, 439-440, 68 S.Ct. 367]; *Aguilar* v. *Texas, supra,* 378 U.S. 108, 111.) Here the inferences that the additional contraband

was present are drawn by Deatrick on the basis of past experience and the magistrate was asked to accept without question Deatrick's suspicion, belief and conclusion. In sum we have in the present case a species of the "procedure by presumption" condemned in *Stanley* v. *Illinois,* 405 U.S. 645, 656 [31 L.Ed.2d 551, 562, 92 S.Ct. 1208], a procedure whereby the affiant seeks the issuance of a search warrant based on his presumption without a statement of adequate supporting facts.

It is significant to note that the search warrant speaks in futuro in that it states that *all* of the property to be seized "will be" at the described premises. The basis for this statement is the factual affirmation underlying the search for the mail parcel and its contents. The parcel would have been delivered to the described premises at the time the warrant was to be executed in view of the affirmation as to the "controlled delivery" of the parcel. This circumstance accentuates the speculative nature of Deatrick's statement based on past experience. It would seem that if he had any knowledge or a sufficient basis for believing that the additional contraband was at the premises he would have spoken in the present tense.

I, therefore, conclude that the subject affidavit sufficed only to warrant the issuance of a search warrant for the mail parcel and its marijuana contents. It should not have been issued for a search of "other hashish, marihuana, narcotics or narcotic paraphenalia [*sic*] . . . Correspondence relating of smuggling hashish, marihuana or narcotics. . . . Or the means and instruments used in violation of 21 USC 952" because the affidavit did not provide a sufficient basis for a finding of probable cause for the search of these objects.

This conclusion does not render the warrant invalid as a whole. The invalid portions of a warrant are severable from the valid portions. (*Aday* v. *Superior Court,* 55 Cal.2d 789, 797 [13 Cal.Rptr. 415, 362 P.2d 47].) The warrant was therefore valid as to the authorization relating to the mail parcel and its contents. Accordingly, item 2 was properly seized. As pointed out in the majority opinion, no attack was made in the court below upon the validity of the warrant insofar as item 1 (the piece of broken Buddha) and item 3 (9 letters) are concerned. We, therefore, need not determine the validity of the search as to these items.

It is the general rule that when a search is made pursuant to a warrant the search and seizure are limited by the terms of the warrant and only the property described in the warrant may be seized. (*Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 155; *Marron* v. *United States,* 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74].) "[N]othing is left to the discretion

of the officer executing the warrant." (*Marron* v. *United States, supra,* at p. 196.) There are exceptions to this rule but they are not applicable here. The search following petitioner's arrest in which items 4, 5, 6, 7 and 8 were seized may not be justified as a search and seizure of articles in plain view. (See *Skelton* v. *Superior Court, supra,* at p. 157.) In the instant case it is obvious that since a search for these items took place the plain view rule cannot be made applicable here. Nor can the search for these items be justified as a warrantless search incident to arrest. Within the ambit of the rule established in *Chimel* v. *California,* 395 U.S. 752, 768 [23 L.Ed.2d 685, 696-697, 89 S.Ct. 2034], the search went beyond real party's person and the area from which he could obtain either a weapon or evidentiary material. The subject items were discovered after real party had been arrested and removed to another room in the house. The record is clear that the other items of contraband (items 5, 6, and 7) were discovered only as a result of the search of a wooden box. As to item 4 (the money order receipts and one shipping receipt) and item 8 (money), the record is unclear as to where these items were discovered in the bedroom, but it is apparent that they were discovered as a result of a search and not because they were in plain view.

I perceive, moreover, that if items 4 and 8 were subject to search and seizure at all they had to be seized pursuant to the authority in the warrant for the search and seizure of "the means and instruments used in violation of 21 USC 952." This is a broad general category which does not meet the requirement of reasonable particularity of description required by the constitutional mandate of the Fourth Amendment of the United States Constitution and article I, section 19 of the California Constitution, and the statutory mandate of Penal Code section 1525. (See *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, 795-796; *People* v. *Tenney,* 25 Cal.App.3d 16, 22 [101 Cal.Rptr. 419].)

Since the motion to suppress was properly granted as to items 4, 5, 6, 7 and 8, I would discharge the alternative writ of mandate and deny the petition for a peremptory writ of mandate.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 18, 1972. Peters, J., and Sullivan, J., were of the opinion that the petition should be granted.