[Crim. No. 13188. In Bank. June 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT BERTRAM BENJAMIN, Defendant and Appellant.

Arthur Lewis for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward Duddy, Deputy Attorney General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendant Robert Bertram Benjamin was charged by information with one count of bookmaking (Pen. Code, § 337a, subd. 1) and one count of keeping or occupying premises for the purpose of bookmaking (Pen. Code, § 337a, subd. 2). The information also charged him with having suffered two prior felony convictions. Defendant waived a jury trial and the matter was submitted on the transcript of the preliminary examination and points and authorities by counsel. The court found defendant guilty as charged, found that the priors were true, and sentenced defendant on each count to state prison for the term prescribed by law, the sentences to run concurrently. Execution of the sentences was suspended and probation was granted for three years subject to conditions imposed by the court. Defendant appeals from the judgment of conviction. (See Pen. Code, § 1237.)

On March 17, 1967, Joseph A. Gunn, a Los Angeles police officer assigned to a vice unit, obtained a warrant authorizing

the search of a described apartment and the person of defendant Benjamin for bookmaking paraphernalia. About 2:40 p.m. on March 18, Officer Gunn and other officers undertook to execute the warrant and proceeded to the described apartment. There, according to the officer's testimony at the preliminary examination, he "yelled 'Police Officer,' and forced entry." Defendant Benjamin was found inside and various items of bookmaking paraphernalia were seized.

At the preliminary examination Officer Gunn was asked his reason for forced entry, and he replied: "It has been my experience in the past if you knock on the door and demand entrance to a bookmaking location, the evidence would be destroyed. I was afraid that this time if I knocked on the door and demanded entrance, the evidence would, in fact, be destroyed."

█ Defendant contends that the evidence admitted against him was illegally obtained because the officer failed to comply with section 1531 of the Penal Code, which provides: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

Although defendant did not object at trial to the admission of the subject evidence on the ground of noncompliance with section 1531, he is not thereby precluded from raising the objection at this time. (*People* v. *De Santiago* (1969) *ante*, pp. 18, 23-28 [76 Cal.Rptr. 809, 453 P.2d 353].)

We conclude that defendant's contention has merit. Clearly the entry of Officer Gunn was not effected in strict compliance with the literal terms of section 1531. (Cf. *Greven* v. *Superior Court* (1969) *ante*, pp. 287, 291 [78 Cal.Rptr. 504, 455 P.2d 432].) Moreover, it is manifest—and the People do not argue otherwise—that the entry was not effected in a manner which constituted "substantial compliance" with the terms of the section (see *Greven* v. *Superior Court, supra, ante*, pp. 287, 291, and cases there cited), for even if we assume that the officer's "yell" was an effort on his part to give "notice of his authority and purpose," it appears that that "yell" was simultaneous with and a part of the entry and that the occupant of the apartment was given no opportunity to grant or refuse admittance. Finally, the record herein provides no basis for concluding that the officer was excused from compliance with the section under the common law exceptions to the rule of announcement. "Our decision in

*People* v. *Gastelo, supra,* 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706], clearly forecloses the propriety of noncompliance with section 844 or its counterpart section 1531 when such noncompliance is based solely upon an officer's general experience relative to the disposability of the kind of evidence sought and the propensity of offenders to effect disposal." (*People* v. *De Santiago, supra, ante,* pp. 18, 28.)

Because the evidence obtained by means of the entry here in question was crucial to the conviction, the judgment must be reversed. However, as we recently indicated in *People* v. *Hamilton* (1969) *ante,* p. 176 [77 Cal.Rptr. 785, 454 P.2d 681], this disposition does not "preclude the possibility of retrial and renewed efforts by the prosecution at that time to show specific facts known to the officers which justified their noncompliance with section 1531." (*ante,* at p. 178.) We therefore proceed to consider a further issue raised by defendant which might arise upon retrial, to wit, the sufficiency of the affidavit in support of the search warrant upon the authority of which the entry was undertaken.[1]

The affidavit in support of the warrant was subscribed and sworn to by Officer Gunn. It was quite extensive and reflected an investigation of defendant's activities which had taken place over a period of more than two months. In summary, the affidavit alleged that on December 21, 1966, affiant had received information from a confidential reliable informant to the effect that defendant was accepting wagers from betters in a specifically described shoe repair shop in Los Angeles; that affiant himself knew that bookmaking operations had previously been carried on in the same shoe repair shop by another person, and the shop was placed under surveillance; that affiant there observed defendant meet and converse with persons known to affiant to be betters and after each such meeting observed defendant go to a public telephone and make a telephone call; that one of affiant's fellow officers overheard one of such telephone calls wherein defendant made statements indicating that he was taking bets and wished to "work a phone spot," namely a location in which wagers are accepted by telephone; that on March 1, 1967, affiant received information from the same informant who had contacted him previously to the effect that defendant was "working a phone spot" for a well-known bookmaking organization and was accepting wagers by telephone from agents of the organization

---

[1]At trial defendant challenged the sufficiency of the affidavit for the warrant and submitted points and authorities on the question.

at a specified telephone number; that affiant traced the telephone number to a specific apartment which was then placed under surveillance; that on six specific dates in the month of March 1967 affiant and other officers observed defendant arriving at the subject apartment (which was not defendant's residence) at about 10 a.m. and remaining there until about 5:30 p.m., at which time he departed therefrom; that on each of such dates horse racing was being conducted at racetracks within the United States, and the first race for the day was run shortly after defendant's entry into the subject apartment, and the last race for the day was run shortly before his departure; that on March 9, 1967, after leaving the subject apartment, defendant proceeded to a certain club frequented by one Canard, the head of the bookmaking organization of which defendant was suspected to be a member; that on that date he left the club with Canard, drove him to certain locations within the city, and waited while Canard made brief visits at such locations; that on Saturday, March 11, 1967, after leaving the subject apartment, defendant again drove to the club and entered; that affiant on the basis of prior experience knew that Canard customarily met on Saturday evenings with that member of the organization responsible for keeping permanent records of wagers in order to receive and examine said records for the week; and that affiant on several occasions dialed the telephone number assigned to the subject apartment after 6 p.m. and received no answer.

The affidavit went on to state in some detail the affiant's reasons for believing the informant to be reliable and his reasons for seeking to withhold the identity of said informant. Finally a printed form comprising a part of the affidavit stated in conclusionary language that the informant claimed to speak from personal knowledge.[2]

 Defendant contends that the affidavit is constitutionally insufficient, and that the warrant based upon it is therefore invalid, because said affidavit is based upon the

---

[2]The printed form contained three statements purporting to bear on the question of personal knowledge. The first, which had been stricken out by the affiant, provided: ''Your affiant states that the said confidential reliable informant did speak with personal knowledge when imparting the information hereinafter set forth, unless and except where specifically stated to be otherwise.'' The second statement provided: ''The said informant stated that he, the said informant, did speak with personal knowledge, unless and except where specifically stated to be otherwise.'' The third statement provided: ''The context and details related by the informant revealed that he, the said informant, did obtain the information through the informant's personal knowledge, unless and except where specifically stated to be otherwise.''

hearsay statements of an informant and fails to reflect the underlying *factual circumstances* from which the informant concluded that defendant was engaged in illegal activity. Thus, defendant seeks to bring to bear against this affidavit the so-called "first prong" of the two-pronged test which the United States Supreme Court has announced for the determination of the sufficiency of affidavits based upon the hearsay statements of an informant. (*Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 728, 84 S.Ct. 1509]; see *Spinelli* v. *United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 641, 89 S.Ct. 584]; *People* v. *Hamilton* (1969) *ante*, pp. 176, 179 [77 Cal. Rptr. 785, 454 P.2d 681]; *People* v. *Tillman* (1965) 238 Cal.App.2d 134, 137-138 [47 Cal.Rptr. 614].)[3]

We conclude without hesitation that the hearsay statements of the informant were not sufficient *in themselves* to justify issuance of the warrant. It is clear that the statements appearing on the printed form (see fn. 2, *ante*) are not of the factual and specific nature necessary to permit the magistrate to conclude that the incriminating facts related by the informant were gleaned through personal observation rather than rumor or gossip. (See *People* v. *Hamilton, supra, ante*, pp. 179, 182.)

However, our consideration of the instant affidavit is certainly not limited to an assessment of the hearsay statements contained therein. The affiant and his fellow officers, not content to rest their case for the issuance of the warrant upon such statements, here undertook a diligent and careful investigation in order to amass incriminating facts, and the results

---

[3]The two-pronged test was stated in *Aguilar* (a narcotics case) as follows: "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' " (Fn. omitted.) (378 U.S. at p. 114 [12 L.Ed.2d at p. 728].)

The test was restated in this jurisdiction in *People* v. *Tillman, supra*, as follows: "First, the statement of the informer in the affidavit must be factual in nature rather than conclusionary and must indicate that the informer had personal knowledge of the facts related . . . . Secondly, the affidavit must contain some underlying factual information from which the issuing judge can reasonably conclude that the informant, whose identity need not be disclosed, was credible or his information reliable. In other words, the magistrate's finding of probable cause can be sustained only if the affidavit presents a substantial basis for crediting the hearsay . . . ." (Fn. omitted.) (238 Cal.App.2d at p. 138.)

of that examination are reflected in the affidavit by means of detailed and precise allegations grounded in personal observation. The question before us is whether—taking together the allegations based upon the officers' observations and the hearsay statements of the informant[4]—the affidavit as a whole sets forth facts "such as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain, a strong suspicion of the guilt of the accused." (*People* v. *Stout* (1967) 66 Cal.2d 184, 192-193 [57 Cal.Rptr. 152, 424 P.2d 704].)

"The warrant can be upset only if the affidavit fails *as a matter of law* to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony. (*People* v. *Govea*, *supra*, [235 Cal.App.2d 285, at p. 297 (45 Cal.Rptr. 253)]; *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 869 [34 Cal.Rptr. 251]; *People* v. *Prieto* (1961) 191 Cal.App.2d 62, 68 [12 Cal.Rptr. 577]; *Arata* v. *Superior Court* (1957) 153 Cal.App.2d 767, 772, fn. [315 P.2d 473].)" (Italics added.) (*People* v. *Stout, supra,* 66 Cal.2d 184, 193.)

The instant affidavit, whose substance we have set forth above, makes the following essential allegations: (a) that pursuant to the informant's tip officers undertook surveillance of the shoe repair shop; (b) that in the course of such surveillance officers saw defendant meeting with known betters and immediately thereafter placing calls at a public telephone; (c) that in the course of such events officers overheard defendant's conversation indicating he was involved in bookmaking and wished to conduct his activities from a "phone spot"; (d) that pursuant to a further tip from the informant officers undertook surveillance of a certain apartment wherein defendant was, according to the informant, accepting bets by telephone; (e) that in the course of such surveillance officers observed that defendant occupied the apartment during daytime hours on days when racing took

[4]In *Spinelli* v. *United States, supra,* 393 U.S. 410, the court, after finding that the informant's tip alleged in the affidavit was itself insufficient to support the warrant, observed that this deficiency did not render the tip "so insubstantial that it could not properly have counted in the magistrate's determination" and proceeded to examine the remainder of the affidavit for allegations of the affiant "which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." (393 U.S. at p. 418 [21 L.Ed.2d at p. 645].)

place; and (f) that the officers saw defendant in the company of a person known to head a bookmaking organization and also saw defendant meet with this person at a time when the latter was known to conduct the business of the organization.

Granting that the information provided by the informant— and reflected in the affidavit by means of hearsay statements —was insufficient to justify issuance of the warrant, we conclude that the combination of that information with the officers' own observations produced a state of facts sufficient to lead the magistrate, as one of ordinary caution or prudence, to believe and conscientiously entertain a strong suspicion that defendant was engaged in bookmaking activities at the apartment which was the subject of the warrant. Clearly the affidavit was sufficient, and the warrant issued upon probable cause.

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.