[Crim. No. 15595. Second Dist., Div. Five. Nov. 5, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
GABRIEL CASTANEDA, Defendant and Appellant.

478

■■■■■■■■■

**COUNSEL**

Frank P. Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**KAUS, P. J.**—Defendant was charged by information with one count of possession of heroin. (Health & Saf. Code, § 11500.) Jury trial was waived and the cause submitted on the transcript of the preliminary hearing plus additional evidence introduced at trial. Defendant was found guilty. Criminal proceedings were adjourned and a petition, pursuant to section 3051 of the Welfare and Institutions Code, was filed in department 95 of the superior court. Defendant was returned to the trial court by the California Rehabilitation Center, having been found not a fit subject for the rehabilitation program. (Welf. & Inst. Code, § 3053.) Defendant was sentenced to state prison, the sentence to run concurrently with that imposed in superior court case number 223770, tried after the trial for the instant offense.

Defendant's sole contention on appeal is that his arrest was illegal and therefore the incidental search of his person which produced the heroin which resulted in his conviction was likewise illegal.

Officer Evans of the Los Angeles Police Department testified that in the latter part of April or early May, 1967, he received information from a tested informer that a person named "Sluggo," also known as Gabriel Castaneda, residing at 6149 Piedmont Street, was engaged in the sale of narcotics, and that these sales took place in a park across the street from that address. Evans had previously received information from this informer that resulted in four arrests, two of which led to California Rehabilitation Center commitments and two of which resulted in the arrestees being held over for trial on burglary charges These trials had not yet been held when the officer testified. Evans personally received the information regarding all four of these individuals from the informer, whose name he refused to disclose.[1]

Evans also had personal knowledge that defendant had used narcotics

---

[1]The refusal to name the informer is not involved in this appeal.

■■■■■■

because Evans had arrested him in front of the Piedmont Street address in June or July of 1966. A conviction for being under the influence of narcotics resulted from that arrest. Evans had also received information from his watch commander that a private citizen had come to the police station and reported that narcotics were being sold at 6149 Piedmont.

On May 25, 1967, Evans saw defendant at a telephone booth across the street from the park the informer had mentioned and from defendant's alleged place of residence. At the time Evans and his partner, Officer Olson, were patrolling the area in plain clothes in an unmarked vehicle. Evans saw four individuals, three of whom had just left a vehicle. One of the three was known to Evans as a narcotics user. As the officers approached, the three persons who had left the car went in different directions. Two went into the park, the known user walked across the street and the driver left the scene. The driver was interrogated and found to be a "parole violator for a narcotics violation."[2] The officers then returned to the park where they observed the defendant and another individual seated on a park bench. As the officers made a U-turn defendant and his companion left the bench and walked farther into the park. Olson left the police vehicle and went into the park on foot. Evans drove to the Piedmont Street entrance and walked into the park in an effort to cut off defendant who was walking away from Olson. Defendant's right hand went to his sweater pocket and "fumbled" in it. Defendant attempted to avoid the officers but was caught in a rundown between them. He shouted: "You can't search me. You don't have probable cause. You can't search me. You don't have probable cause." He was arrested. A search of defendant's person produced three balloons stipulated to contain heroin.

Defendant testified in his own behalf. He claimed that he had no heroin on his person at the time of the arrest. He denied that he lived at the Piedmont address.[3]

The trial court found that there was probable cause to arrest, after specifically ruling that the informer was reliable. It made no other express finding.

Although it has been repeatedly held that information obtained from a reliable informer constitutes reasonable cause to make an arrest and

---

[2] Direct proof that there was any connection between defendant and the four other persons seen at the scene is tenuous, at best. In the officer's words, when he approached the scene he "saw the defendant and several other men." There was no evidence of any physical or verbal contact between defendant and the others. The record does not say whether the person who walked into the park with defendant was, or was not, one of the four individuals first seen by Evans. It must be remembered, however, that this evidence was offered only on the issue of probable cause.

[3] He had to admit, however, that he was at the place almost daily. This evidence was offered in a vain attempt to destroy the reliability of the informer.

search without a warrant (*People* v. *De Santiago,* 71 Cal.2d 18, 21-22 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]) recent developments in the law of search and seizure demonstrate that the problem in not quite as simple.

In view of the often expressed preference for the warrant procedure (*Chimel* v. *California,* 395 U.S. 752, 761-762 [23 L.Ed.2d 685, 692-693, 89 S.Ct. 2034]; *United States* v. *Ventresca,* 380 U.S. 102, 105-107 [13 L.Ed.2d 684, 686-688, 85 S.Ct. 741]; *Aguilar* v. *Texas,* 378 U.S. 108, 110-111 [12 L.Ed.2d 723, 725-726, 84 S.Ct. 1509]; *Giordenello* v. *United States,* 357 U.S. 480, 486 [2 L.Ed.2d 1503, 1509, 78 S.Ct. 1245]; *Johnson* v. *United States,* 333 U.S. 10, 13-14 [92 L.Ed. 436, 439-440, 68 S.Ct. 367]) it cannot be the law that where an arrest without a warrant is sought to be justified on information obtained from a reliable informer, the People can carry their burden with weaker proof than they would have to produce in support of a warrant before a magistrate. (*Spinelli* v. *United States,* 393 U.S. 410, 417, fn. 5 [21 L.Ed.2d 637, 644, 89 S.Ct. 584].) It follows from this premise that the police testimony at a preliminary hearing, a motion under section 1538.5 of the Penal Code or at a trial must be at least as specific as an affidavit on the basis of which a warrant is sought. The testimony in the case at bar does not meet that test.[4]

"Following *Aguilar,* California courts have held that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary *and must establish that the informant spoke with personal knowledge of the matters contained in such statement*; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. . . ." (*People* v. *Hamilton,* 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]. Italics added.) (See also *People* v. *Scoma,* 71 Cal.2d 332, 335-340 [78 Cal.Rptr. 491, 455 P.2d 419]; and *People* v. *Benjamin,* 71 Cal.2d 296, 300-303 [78 Cal.Rptr. 510, 455 P.2d 438].)

---

[4]To avoid misunderstanding, we emphasize that our discussion is limited to the use of information obtained by a reliable informer as furnishing probable cause to arrest. We say nothing about confrontations between police and suspects or witnesses, voluntary or otherwise, which do not constitute as severe an intrusion into a person's privacy as an actual arrest.

■ The problem with the testimony below is not that it lacks enough information from which the court could reasonably conclude that the informer was reliable, but that it was never established that he spoke with personal knowledge when he told Officer Evans that defendant was selling heroin in the park across the street from his alleged residence. The entire testimony on that point is as follows: "THE WITNESS: In the latter part of April, early May, I received information from an informant that a person named Sluggo, also known as Gabriel Castaneda, resided at 6149 Piedmont Street, and he was engaged in the sale of narcotics; That he would frequent the playground area located at Piedmont and Figueroa Street and sell narcotics to wit, Heroin." This is very similar to the defect found in *People* v. *Hamilton, supra,* 71 Cal.2d 176, 180-182. There is nothing to indicate "that the informer had gained his information in a reliable way." (*Spinelli* v. *United States, supra,* 393 U.S. at p. 417 (21 L.Ed.2d at p. 644].)

■ Thus the arrest and search cannot be justified by the reliable informer alone. There was, however, much more. First and foremost, there was the information given by the citizen informer to the watch commander. (*People* v. *Scoma, supra,* 71 Cal.2d 332, 338, fn. 7; *People* v. *Hogan,* 71 Cal.2d 888, 891 [80 Cal.Rptr. 28, 457 P.2d 868].)[5] In addition there was the officer's personal knowledge derived from the 1966 arrest and conviction and defendant's company and behavior when observed in the park.[6]

---

[5]We note that had the defense interposed a proper challenge (*People* v. *Escollias,* 264 Cal.App.2d 16, 19 [70 Cal.Rptr. 65]) the prosecution would have been forced to call the watch commander who relayed the information to Officer Evans. (*People* v. *Adkins,* 273 Cal.App.2d 196, 198-200 [78 Cal.Rptr. 397].)

[6]On cross-examination Officer Evans replied "Yes, sir" when asked the following question: "When you approached him in the park it was your intention at that time to put him under arrest; was it not?" It is argued that if the officer did not have probable cause at the moment when he decided to make an arrest any suspicious behavior on the part of defendant, such as his apparent attempts to avoid a confrontation with the officer and his protests just before the arrest, cannot be taken into consideration because they are the product of overbearing police conduct. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 273 [294 P.2d 23]; *Gascon* v. *Superior Court,* 169 Cal.App.2d 356, 358 [337 P.2d 201].) We need not decide whether a mere subjective intent, unaccompanied by conduct evincing more than a desire to do what the officer could legally do, that is to try to talk to the defendant, prohibits reliance on words and acts indicating a consciousness of guilt. The problem with defendant's position in this case is that it was never established at what precise moment during the "approach" the officer formed the intent to arrest. He was still approaching when defendant shouted "You can't search me. You don't have probable cause." A prosecution attempt to establish just when the officer formed the intent to arrest was blocked by a successful objection that the question was irrelevant.

[e]Advance Report Citation: 71 A.C. 189, 193-195.

The only remaining problem is whether we can affirm on the basis of an analysis of the evidence relating to probable cause which may be different from that of the trial court, which, it will be recalled, only adverted to the reliability of the informer. The problem is raised by cases such as *People* v. *Kanos,* 70 Cal.2d 381 [74 Cal.Rptr. 902, 450 P.2d 278]; and *People* v. *Henry,* 65 Cal.2d 842 [56 Cal.Rptr. 485, 423 P.2d 557]. In *Kanos* the trial court excused a violation of section 844 of the Penal Code solely on the untenable ground that the defendant was a parolee. On appeal the People's argument that the evidence would have justified non-compliance with section 844 for other reasons was disposed of as follows: ". . . Even if we assume that the evidence may be sufficient to excuse compliance with section 844 on the basis of either or both of these rules, it is clear that the trial court sought to excuse compliance on the ground that Kanos was a parole violator and did not determine that the officers had a reasonable belief that evidence would be destroyed while the requisite demand was made or that their peril would be increased by compliance. In the absence of such express *or implied* determinations by the trial court, we cannot hold that as a matter of law compliance with section 844 was excused. The appellants were entitled to a factual determination on this issue. (Cf. *People* v. *Sesslin,* 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321]; *People* v. *Henry, supra,* 65 Cal.2d 842, 846.) Although the officers had some information to the effect that Kanos might be armed, the information from the parole officer was about a year old and the information from Captain Baucum, if not based on the parole officer's information, was seemingly more than eight years old." (*People* v. *Kanos,* 70 Cal.2d 381, at pp. 384-385 [74 Cal.Rptr. 902, 450 P.2d 278]. Italics added.)

In *Henry,* the defendant was arrested on the street. Marijuana was then discovered in his hotel room. There was conflicting evidence on whether he had consented to the search of his room. Expressing doubt that there had been a consent, the trial court nevertheless upheld the search on the erroneous ground that it was incident to the arrest. The Supreme Court reversed, holding that the trial court's failure to determine the issue of consent was prejudicial.

It is true that in the case at bar the trial court was so impressed with the reliability of the informer that in the various colloquies relating to the admissibility of the heroin it appeared to pay scant attention to the rest of the evidence on the issue of probable cause. Relevant portions of the record are summarized in the footnote.[7]

---

[7]The case was submitted on the transcript of the preliminary hearing plus additional evidence. The trial took place before section 1538.5 of the Penal Code became effective. Initially the People rested. Defendant then called two witnesses to prove

We think, however, there is one significant difference between this case and *Henry* and *Kanos*: In each of those cases the trial court expressly upheld the search on an improper ground. Moreover, at least in *Henry*, it expressed doubt that another ground which would have made the search legitimate, was adequately proved. Just what the trial court in *Kanos* said about the factors which might properly have excused compliance with section 844, is not shown by the record, but as the last sentence of the quoted portion of the Supreme Court's opinion shows, that court was less than sanguine about the People's ability to prove them. Here the trial court said nothing to negative the presumption that it considered the other factors giving Officer Evans probable cause to arrest. The overruling of the objection to evidence about the 1966 arrest indicates that it had them in mind. The court's insistence that the reliability of the informer was the "heart of this case" does not prove that it ignored the additional factors. The express finding that the informer was reliable does not detract from the ultimate correctness of the ruling, as did the express findings in *Henry* and *Kanos*, for even if the information furnished by a reliable informer is not, by itself, sufficient, it is, after all, more supportive of probable cause than tips received from an untested source.

■ On appeal the basic rule is that it will be assumed that the trial court impliedly found every fact, necessary to support its ruling, to be true. (*People* v. *Valdez*, 203 Cal.App.2d 559, 563 [21 Cal.Rptr. 764]; *People*

---

that he did not live at the Piedmont Street address. His counsel then moved to suppress the heroin. The court correctly stated that the issue was whether there was probable cause to arrest, "but the whole issue in this case is the reliability of the informant as to whether or not this is adequate to support probable cause for making the arrest." After further discussion the court again stated: "The main issue it seems to me right here is whether or not this informant was a reliable informant." The prosecutor then obtained permission to recall Officer Evans for further testimony on the reliability of the informer. Permission was granted, the court saying ". . . to me that is one of the real issues before this Court. . . . I think that is at the heart of this case." Evans then testified concerning the earlier arrests and successful prosecutions made on the basis of the information supplied by the informer. He was also asked a few questions concerning his 1966 arrest of defendant. It is perhaps significant that the court overruled an objection that that evidence did not go to the reliability of the informer by saying: "I think the entire issue of probable cause is before the Court; so for that reason the objection will be overruled." After argument, the motion to suppress was denied. Defendant then testified. In his direct testimony he did not contradict any of the circumstances preceding the arrest in May 1967. During the cross-examination he did deny having shouted to the officers that they could not search because they had no probable cause. He also denied having run away from the officers, claiming that he merely turned around, started walking, kept walking and that he was "grabbed all of a sudden." The People waived opening argument. The defense argument again attacked the validity of the arrest, arguing essentially that it was a violation of the Fourth Amendment to permit an arrest based on information supplied by an anonymous informer. The prosecutor replied, pointing to some of the corroborative circumstances. After the matter was submitted the court, in giving its reasons for finding the defendant guilty, stressed again that the informer was reliable.

v. *Cunningham,* 188 Cal.App.2d 606, 609-610 [10 Cal.Rptr. 604]; *People* v. *Neal,* 181 Cal.App.2d 304, 308 [5 Cal.Rptr. 241].) There is no requirement that a ruling refusing to suppress evidence be supported by express findings. That much is recognized even by *Kanos,* which, in the quoted passage speaks of "express or implied determinations by the trial court." Had the trial court in *Henry* said nothing, the judgment would presumably have been affirmed.[8] We cannot read *Henry* or *Kanos* as establishing a rule that if the trial court, as here, expressly and correctly finds on one of the factors supporting probable cause to arrest, its ruling refusing to suppress the evidence will be reversed unless it makes express findings on all the others.

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1969.

---

[8]In view of the Supreme Court's doubts that the evidence in *Kanos* justified a failure to comply with section 844 for any reason, the same statement cannot be made about that case.