[Crim. No. 22388. First Dist., Div. One. Jan 12, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
BRADLEY JOHN McFADIN, Defendant and Appellant.

COUNSEL

Thomas Steel for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Thomas A. Brady and Charles J. James, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SIMS, J.*—Defendant has appealed from an order suspending imposition of sentence, and placing him on probation for three years (Pen. Code, § 1237, subd. 1). It was entered following his plea of guilty to possession of marijuana in violation of section 11357, subdivision (a) of the Health and Safety Code. He seeks review of the trial court's order denying his motion to suppress evidence. (Pen. Code, § 1538.5, subd. (m).)

Defendant contends that the trial court erred in failing to suppress the evidence on which his conviction rests because that evidence was seized under a search warrant that was issued on an affidavit that was faulty in the following particulars: 1) it contained deliberately false statements of fact; 2) it fails to set forth a material fact which was deliberately omitted by the subscribing officer; and 3) because it fails to

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

contain facts establishing the reliability of an alleged confidential reliable informant.

An examination of the evidence introduced on the motion to suppress in the light of appropriate principles of law indicates that it sustains the implied findings of the trial court that the affidavit was sufficient, that any alleged taints were not intentionally misleading or recklessly inaccurate so as to materially affect the judgment of the magistrate in issuing the warrant, and that the reliability of the confidential informant was established by sufficient allegations in the affidavit.

In order that the situation at the time the affidavit was made may be placed in proper perspective, we review the facts as they were developed by the two investigating officers who testified in the matter.

The investigation was originated by a telephone call received by Officer Hood, whose testimony at a suppression hearing in the municipal court was adopted at the superior court hearing on the motion to suppress. Hood had been with the narcotic detail since January 1979. He commenced the investigation in April of 1979 after a complaint was received in a telephone call that was logged in a chronological report of the investigation as received on April 18, 1979, from a citizen informant. The informant refused to give his name when requested to do so by the officer. The informant stated that he had been in the defendant's apartment and had observed the defendant selling drugs there between the hours of 5:30 and 7:30 in the evening. The informant gave Hood the defendant's residence address and the name of his place of business.

In either late April or early May 1979, Hood went to the defendant's address to determine if the area was suitable for a surveillance, and found it was not. He also went to defendant's place of business and identified him as the occupant he had seen at the apartment and as the driver of a van that proved to be registered to the defendant.

The defendant apparently moved away from his original address, and in a subsequent telephone call, presumably that of July 10, 1979, Hood was advised of the defendant's new address by the original informant. Hood went by the premises about three times, and on one occasion he observed the defendant leave the van which was registered to him and enter the upper flat at the new address. He also ascertained that the defendant's phone had been listed to that address. On November 9, 1979,

he received another call from the original informant complaining that drugs were being sold at the new address.

On November 16, 1979, Hood, alone, made his first formal surveillance of the premises. He parked his car across the street, and then got out and moved closer on foot so he could see better. He passed the doorway several times. He counted eight people who pushed the button for and were admitted to defendant's flat. On numerous occassions, he observed the caller stand back so he could be observed from above, and he saw the defendant come to the window of the upper flat to identify his visitor.

On January 22, 1980, Hood and Officer Guerrero, who later prepared and executed the search warrant and whose testimony in the superior court hearing is reviewed below, conducted a surveillance at the defendant's address from a surveillance van parked in front of the premises. The defendant was observed when he stood in the window of the premises. Visitors were observed as they pushed the button for the defendant's flat and were admitted, after, in most cases, standing back to be identified by the defendant who looked down from above.

Officer Guerrero testified in the superior court. He was assigned to the narcotic detail in November 1979 as a partner to Officer Hood and joined with him in the investigation of the defendant. They had numerous conversations about the investigation, and he used information secured from Hood in preparing the affidavit for the search warrant.

Hood told Guerrero in the course of several conversations that he had received a phone call on April 18, 1979, from a citizen who had informed him that the defendant, giving his name and address, was selling narcotics out of his apartment. He did not give the informant's name and Guerrero took for granted he was anonymous, and ascertained from Hood that he had attempted to get the informant's name, but the latter had refused and preferred not to give his name because he feared retaliation. Hood had told him that he believed it was the same caller on all three occasions.

Guerrero's further testimony concerning the alleged discrepancies between the facts and the allegations of his affidavit, and his testimony concerning the police experience with the alleged confidential reliable informer are set forth where relevant below.

I

*Deliberate False Statement*

In *Theodor v. Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234], the court held, "[A] defendant may challenge the factual veracity of an affidavit in support of a [search] warrant and if statements contained therein are demonstrated to be false and if the affiant was unreasonable in believing the truth of such information, those facts must be excised from the affidavit and probable cause tested from the remaining truthful information." (*Id.*, at pp. 100-101, fn. omitted.)

The court had noted, "[M]isstatements contained in an affidavit generally fall into three categories: reasonable errors made in good faith; negligent mistakes; or intentional falsehoods." (*Id.*, at p. 95.) It had pointed out "if a magistrate is presented with false or inaccurate information in an application for a warrant, the inferences he draws from such information are not based on reality but on the fantasies of the misinformed or misinforming affiant. Regardless of whether misstatements are intentionally false or the product of reasonable or unreasonable cerebration, their ineluctable result is an adverse effect upon the normal inference-drawing process of the magistrate." (*Id.*, at p. 96.) Nevertheless, it rejected the suggestion that errors that were reasonable under the circumstances should be excised in determining the validity of the affidavit. It stated: "To exclude evidence obtained pursuant to a warrant issued on the basis of facts upon which an affiant has reasonably relied as being accurate serves no purpose of deterrence to unlawful conduct since, by definition, the affiant has already made a reasonable attempt to comply with the requirements of the Fourth Amendment." (*Id.*, at p. 97.) The court did not reach the issue of whether the use of intentional misstatements should result in automatically quashing the warrant. (*Id.*, at p. 101, fn. 14.)

In *People v. Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130], the court reached the last mentioned issue and concluded "both the rationale of *Theodor* and the purposes of the constitutional guarantee of freedom from unreasonable searches and seizures compel the exclusion of evidence obtained pursuant to a warrant issued on an affidavit containing deliberately false statements of fact, regardless of the effect of those statements on probable cause." (*Id.*, at p. 75.) The court reached this conclusion and rejected a mere extension of the excision principle as applied by the United States Supreme Court in *Franks v.*

*Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674], on the following rationale: "If the magistrate had known the officer was deliberately lying to him in making certain of the allegations in the affidavit, he might well have disbelieved some or all of the remainder. His ignorance of this crucial fact undermines his determination of the officer's credibility, and the reviewing court can no longer rely on that determination for the facts necessary to test the magistrate's conclusion of probable cause. In short, although the court can excise the intentionally false allegations it cannot presume the remainder to be true. Lacking a reliable factual basis in the affidavit, the court has no alternative under settled constitutional principles but to quash the warrant and exclude the products of the search." (*Id.*, at pp. 86-87, fn. and citations omitted.) In addition it pointed out that the rule adopted "simply seeks to deter the police from lying to the magistrate—surely an obvious prohibition which all can understand and obey." (*Id.*, at p. 88, fn. omitted.)

The court laid down the procedure to govern the hearing on a motion to suppress in such a case. The defendant retains both the burden of producing evidence of the affiant's knowledge of falsity (Evid. Code, § 550) and the ultimate burden of proof by a preponderance of the evidence on that issue. (Evid. Code, §§ 500 and 115.) (*Id.*, at p. 89.)

■ We turn now to the alleged misstatement of fact. The affidavit refers to the first telephone call as having been received from "a citizen informant."[1] Defendant points out, as the evidence set forth above demonstrates, that the caller was the same anonymous and therefore unreliable tipster who called the police on July 10, 1979, and November 9, 1979. To show that Officer Guerrero's allegation was an intentional, or at least a reckless misrepresentation, he compares the allegation in the affidavit with the definition of "citizen-informant" coined by Presiding Justice Molinari of this court in *People* v. *Schulle* (1975) 51 Cal.App.3d 809, at pages 814-815 [124 Cal.Rptr. 585], and adopted in *People* v. *Smith* (1976) 17 Cal.3d 845, at pages 850-851 [132 Cal.Rptr. 397, 553 P.2d 557], as follows: "'A "citizen-informant" is a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. [Citations.] It is reasonable for police officers to act upon the

---

[1]Officer Guerrero wrote, "On April 18, 1979 the narcotics detail received a telephone complaint from a citizen informant. The complainant stated that Brad McFadin, who owns a pizza restaurant on the corner of Castro and Market Street, is selling marijuana, methaqualone, and other drugs, from McFadin's apartment. The complainant stated that he had been in the apartment while transactions were taking place."

reports of such an observer of criminal activity. [Citations.] [¶] A "citizen-informant" is distinguished from a mere informer who gives a tip to law enforcement officers that a person is engaged in the course of criminal conduct. [Citations.] Thus, experienced stool pigeons or persons criminally involved or disposed are not regarded as "citizen-informants" because they are generally motivated by something other than good citizenship. [Citations.]'" (See also *People* v. *Ramey* (1976) 16 Cal.3d 263, 268-269 [127 Cal.Rptr. 629, 545 P.2d 1333], cert. den. 429 U.S. 929 [50 L.Ed.2d 299, 97 S.Ct. 335]; *People* v. *McCarter* (1981) 117 Cal.App.3d 894, 902-903 [173 Cal.Rptr. 188]; *People* v. *Superior Court* (*Bingham*) (1979) 91 Cal.App.3d 463, 470-472 [154 Cal.Rptr. 157]; *People* v. *Abbott* (1970) 3 Cal.App.3d 966, 970-971 [84 Cal.Rptr. 40].)

*Cook, supra*, 22 Cal.3d 67, tells us that proof of the affiant's falsity may be evidenced by the affirmative statement or admission of the possessor of it or by circumstantial evidence. (*Id.*, at pp. 89-90.) It also recognizes that a sworn misstatement made with conscious indifference to whether it is true or false is deemed the equivalent of an allegation actually known to be untrue. (*Id.*, at p. 90.) It does not say that the truth or falsity of an allegation made by a police officer in typing out in the squad room a report or affidavit in Lardneresque patois, well known to those engaged in the administration of justice at a level where police reports are the stock in trade, shall be evaluated in the light of the penetrating and philosophical prose of the appellate bench.

If we apply the test suggested by defendant we have to presume that Officer Guerrero was also familiar with the language that immediately follows that quoted above from *People* v. *Smith, supra*, 17 Cal.3d 845, namely, "The designation 'citizen-informant' is just as conclusionary as the designation 'reliable-informant.' In either case the conclusion must be supported by facts stated in the affidavit. [Citations.]" (*Id.*, at p. 851.) He would also undoubtedly know that the rule that a "citizen-informant" can be considered reliable "presupposes that the police be aware of the identity of the person providing the information and of his status as a true citizen informant." (*People* v. *Ramey, supra*, 16 Cal.3d at p. 269, citing *People* v. *Abbott, supra*, 3 Cal.App.3d 966, 970-971.)

The officer therefore could not believe that the magistrate would consider the original call more than a tip because the caller's identity was not disclosed and it appeared that he was present when transactions were made and so may have been a party to a criminal act. In fact, in

ruling on the motion to suppress made in the municipal court the magistrate stated that she did not feel there was anything to suggest an intentional misrepresentation, that she was not sure there was any misrepresentation, but that if it were to be assumed that there was a negligent misrepresentation and the misleading information were excised, there was still a very careful and comprehensive investigation and probable cause. It is clear in view of the paucity of information concerning the original "citizen-informant" both the police and the magistrate, and the judge ruling on defendant's motion, considered his complaint a tip which had to be investigated and corroborated before it could furnish probable cause.

Before disposing of the matter we must descend from the fantasy of comparing incomparable prose, and test the allegation of the affidavit by the actual evidence bearing on the state of mind of the affiant. If he had the scienter to deceive the magistrate, there might be some ground for discouraging that conduct.

The record reflects that the phrase "citizen-informant" first appeared in the chronological report of the investigation. That was revealed when the report was used by the defendant's attorney in cross-examining Officer Hood on another point. Hood consulted the chronological report of the investigation in informing Officer Guerrero about the April 18, 1979, call when Guerrero joined the investigation. When he testified, Hood referred to the investigation as beginning with a complaint received from a "citizen-informant." He stated he made out a complaint form at the time. Hood did not make the affidavit, but he testified that when he used the term "citizen-informant" he usually referred to an individual who called regarding a conduct or criminal activity at a location, who was not involved in that criminal activity, who was reporting it because of his good citizenship and who usually had identified himself to the officer.

Officer Guerrero joined the investigation after the receipt of the April and June phone calls, and did not receive the November 1979 call. In preparing the affidavit he relied upon information secured from Officer Hood. Guerrero acknowledged that he dealt with informants regularly in his work, that he had occasion to deal with citizen-informants, confidential informants, and anonymous informants, in the sense they didn't identify themselves. He testified that when he put down the words "citizen-informant" in the affidavit it meant a citizen who has come forth on his own to inform of criminal activity, who is not active

in that activity, or who has not been, as the police put it, turned over by the police—a person who is acting out of motives of good citizenship. When asked if it referred to a person who has identified himself, the officer replied, "In some cases yes. I believe a citizen who calls up and says, 'There has been a murder,' he's afraid for his own safety, he doesn't give his name, he's still a citizen."

When defendant's attorney sought the basis Guerrero had for believing that the caller of April 18th was acting out of motives of good citizenship, the officer replied somewhat illogically, that it was because Officer Hood had attempted to get his name once or twice, and the informant refused because there might be retaliation, and because the informant had called three times. When asked why he referred to the caller once as a "citizen-informant" and referred to later calls from the same informant as "anonymous calls" (see point II, *infra*), Guerrero stated he had no intention other than to convey that the caller was a citizen who was anonymous.

It is clear that the affidavit did not convey what Officer Guerrero testified he intended to convey. Nevertheless, the trial court did not err in concluding that there was no intentional misstatement of the kind that would mislead a magistrate. The affiant was not the one who received the anonymous calls. He believed an anonymous caller could be a "citizen" despite the fact he did not reveal his identity. Presumably the chronological report was made contemporaneously with the events it recited and the affiant blundered in failing to rectify the accounts of the calls received to accord with the true facts. This is not a case where the intentional or reckless mislabeling of an informant is of itself relied upon to secure a search warrant. As we have noted above, the police, the holding magistrate, and the superior court judge all realized that corroboration of the information received in the phone calls was necessary. We must presume the issuing magistrate similarly read the affidavit as a whole. Under those circumstances nothing would be served by quashing the warrant and excluding the evidence.

## II

*Deliberately Misleading Omission of a Material Fact*

■ The California Constitution and statutes permit defendant to attack a facially sufficient warrant affidavit on grounds that, although it

contains no affirmative falsehoods it is incomplete. (*Kurland* v. *California* (1980) 28 Cal.3d 376, 384 [168 Cal.Rptr. 667, 618 P.2d 213], cert. den. 451 U.S. 987 [68 L.Ed.2d 844, 101 S.Ct. 2321]; see also *People* v. *Joubert* (1981) 118 Cal.App.3d 637, 650 [173 Cal.Rptr. 428]; *Morris* v. *Superior Court* (1976) 57 Cal.App.3d 521, 526-528 [129 Cal.Rptr. 238]; cf. *People* v. *Brevetz* (1980) 112 Cal.App.3d 65, 72 [169 Cal.Rptr. 116]; *People* v. *Neusom* (1977) 76 Cal.App.3d 534, 538-542 [143 Cal.Rptr. 27]; *People* v. *Barger* (1974) 40 Cal.App.3d 662, 668-669 [115 Cal.Rptr. 298]; *People* v. *Webb* (1973) 36 Cal. App.3d 460, 470-471 [147 Cal.Rptr. 608].)

In *Kurland*, the opinion states, "An affidavit need not disclose every imaginable fact however irrelevant. It need only furnish the magistrate with information, favorable and adverse, sufficient to permit a reasonable, common sense determination whether circumstances which justify a search are probably present. [Citations.]" (28 Cal.3d, at p. 384.) After reviewing *Neusom, Morris, Barger* and *Webb, supra,* the court continued, "We conclude . . . that facts are 'material' and hence must be disclosed if their omission would make the affidavit *substantially misleading.* On review under section 1538.5, facts must be deemed material for this purpose if, because of their inherent probative force, there is a substantial possibility they would have altered a reasonable magistrate's probable cause determination." (*Id.,* at p. 385.)

█ Here the affiant failed to reveal that the call on April 18, 1979, and the two telephone calls on July 10, 1979, and on November 9, 1979, were all from the same person.[2] The failure to do so gives the reader the impression that the first call was of more significance than the others. But as we have concluded above, nobody intended to mislead, nor was anyone rushed into believing that the information received in the first call from an unidentified "citizen-informant" was of such reliability as to furnish probable cause for a search warrant without corroboration. Therefore the false impression, if corrected, would not have altered a reasonable magistrate's probable cause determination.

The omission also leaves open the false inference that the police were besieged with three separate reports of the same alleged criminal con-

---

[2]The affidavit states: "On July 10, 1979 the narcotics detail received an anonymous call that Brad McFadin was selling cocaine, marijuana and other drugs from 1110 Dolores Street, San Francisco, California. [¶] On November 9, 1979 the narcotics detail received an anonymous call the complainant stated that Brad is selling methaqualone, cocaine and other drugs, from 1110 Dolores Street, San Francisco, California."

duct. When the information is from the same unreliable informant it does not become reliable because it is repeated. "The quantification of the information does not necessarily improve its quality; the information does not rise above its doubtful source because there is more of it." (*Ovalle* v. *Superior Court* (1962) 202 Cal.App.2d 760, 763 [21 Cal.Rptr. 385]; see also *People* v. *Cedeno* (1963) 218 Cal.App.2d 213, 222 [32 Cal.Rptr. 246].) Here, however, there was no attempt to rely on three separate complaints as buttressing one another. The three phone calls were treated as tips necessitating corroboration. They explain why the investigation was of long standing, but apparently no concentrated, thorough investigation was made until after the third call. The omission was not material as to whether the calls were made by one or by several persons. It was intended, and intended to be understood, that the information would require corroboration and could not furnish probable cause.

Even were we to consider the omission material, for the reasons expressed in part I we would find it a negligent, rather than an intentional omission. Under *People* v. *Kurland, supra*, 28 Cal.3d 376, in such case the "add and retest" formula is proper. (*Id.*, at p. 388.) If we find the truth, the probable cause developed by the ongoing investigation as reported in the affidavit is not diminished. We therefore direct our attention to defendant's third contention.

### III

*Reliability of the Confidential Informant*

The principal allegations of Officer Guerrero's affidavit on which the People rely to show probable cause read as set forth in the margin.[3] De-

---

[3]The affidavit states: "On April 11, 1980 at 1945 hrs. your affiant met with a confidential reliable informant (hereafter referred to as CRI). Your affiant believes CRI to be reliable because CRI has provided information to your affiant and other members of the San Francisco Police Department on approximately 12 occasions: such information has led to numerous on going investigations. All of the CRI's information has been verified to be true and correct through affiant's investigations: such as: CRI gave your affiant a name, address, and phone number of a person who CRI stated was trafficking narcotics, the information CRI gave to your affiant was known to your affiant prior to getting the information from CRI, and CRI did not know that your affiant knew the information. Your affiant has questioned CRI regarding CRI's knowledge of marijuana and how he identified it. CRI informed your affiant that on past occasions CRI has purchased and used marijuana. [¶] On April 11, 1980, at approximately 1945 hrs., your affiant met with CRI. CRI then placed a telephone call to telephone number 821-9767 and asked for 'Brad', CRI then asked 'Brad' if he had a pound of marijuana,

fendant contends that the search warrant is invalid because the reliability of the confidential informant is not demonstrated by the affidavit. The parties agree that the allegations set forth in the margin must be evaluated in light of the two-pronged test laid down in *Aguilar v. Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and the progeny it has spawned in state and federal decisions. "Following *Aguilar*, California courts have held that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. [Citations.]" (*People v. Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]. See also *Spinelli v. United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 641-642, 89 S.Ct. 584]; *United States v. Ventresca* (1965) 380 U.S. 102, 106 [13 L.Ed.2d 684, 687-688, 85 S.Ct. 741]; *People v. Smith, supra,* 17 Cal.3d 845, 850; *People v. Mesa* (1975) 14 Cal.3d 466, 470, fn. 1 [121 Cal.Rptr. 473, 535 P.2d 337]; *People v. Hill* (1974) 12 Cal.3d 731, 760-761 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another point in *People v. DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872]; *People v. Superior Court (Johnson)* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183]; *People v. Madden* (1970) 2 Cal.3d 1017, 1022 [88 Cal.Rptr. 171, 471 P.2d 971]; *Price v. Superior Court* (1970) 1 Cal.3d 836, 840 [83 Cal.Rptr. 369, 463 P.2d 721]; *People v. Scoma* (1969) 71 Cal.2d 332, 336 [78 Cal.Rptr. 491, 455 P.2d 419]; *People v. Benjamin* (1969) 71 Cal.2d 296, 301, fn. 3 [78 Cal.Rptr. 510, 455 P.2d 438]; *People v. McCarter, supra,* 117 Cal.App.3d 894, 902; *People v. Schmidt* (1980) 102 Cal.App.3d 172, 177 [162 Cal.Rptr. 171]; *People v. Zepeda* (1980) 102 Cal.App.3d 1, 4 [162 Cal.Rptr. 143]; *People v. Gray* (1976) 63 Cal.App.3d 282, 287 [133 Cal.Rptr. 698]; *People v. Nadell* (1972) 23 Cal.App.3d 746, 752 [100 Cal.Rptr.

CRI then inquired on the quality of the marijuana. After the telephone conversation CRI informed your affiant that CRI had spoke to Brad McFadin and that Brad McFadin had informed CRI that he did have a pound of marijuana and that it would cost CRI $485.00, CRI also informed your affiant that Brad McFadin stated to him that the marijuana was of good quality. It should be noted that your affiant was beside CRI while the telephone call was placed. A check with intelligence revealed that the phone number is issued to Bradley McFadin at 1110 Dolores Street, San Francisco, California."

444]; *People* v. *Aguirre* (1970) 10 Cal.App.3d 884, 889 [89 Cal.Rptr. 384]; *People* v. *Castaneda* (1969) 1 Cal.App.3d 477, 481 [82 Cal.Rptr. 205]; and *People* v. *West* (1965) 237 Cal.App.2d 801, 805 [47 Cal.Rptr. 341].)

■ Defendant by fractionating the allegations of the affidavit seeks to demonstrate that it lacks the requisite indicia of reliability. He first attacks the statement reading "Your affiant believes [the confidential reliable informant] to be reliable because [he] has provided information to your affiant and other members of the San Francisco Police Department on approximately 12 occasions: such information has led to numerous on going investigations."[4] Defendant insists that prior arrests and convictions are the bench mark of a demonstrable track record to establish reliability. He first cites a series of cases in which the element of the reliability of the informant was deemed established,[5] and he argues that the allegation that this informant's information had led to numerous ongoing investigations falls far short of the approved allegations. The fact that more precise or convincing evidence may have been approved does not enlighten us as to the minimum that will suffice. Because we conclude that the allegations of the affidavit must be considered as a whole to determine whether they establish the reliability of the alleged confidential reliable informant, we do not determine whether a sole allegation that information received from the informant has led to numerous ongoing investigations is or is not sufficient evidence of reliability. We note, however, the following observation in *People* v. *Superior Court* (*Johnson*), *supra*, 6 Cal.3d 704, "The affidavit had to contain facts showing the reliability or credibility of the confidential informant, but his reliability would appear to have been established by the detailed nature of his observations and by corroborating information about the 59th Street address. [Citation.]

---

[4]Officer Guerrero testified in the hearing on the motion to suppress in the Supreme Court that he had personally received information from the informant three or four times; that the informant told him he had given information to other officers in the police department; that he verified that fact with his fellow officers; and that from their statements, he concluded that there had been approximately 12 occasions on which the informant had furnished information.

[5]Those cases are *People* v. *Madden, supra,* 2 Cal.3d 1017, 1019; *Price* v. *Superior Court, supra,* 1 Cal.3d 836, 839; *People* v. *Hamilton, supra,* 71 Cal.2d 176, 179; *People* v. *Nadell, supra,* 23 Cal.App.3d 746, 749; *People* v. *Aguirre, supra,* 10 Cal.App.3d 884, 887-889; and *People* v. *Castaneda, supra,* 1 Cal.App.3d 477, 479. In the first four cases the evidence was suppressed because the record failed to show that the reliable informant had personal knowledge of the facts relied upon to establish probable cause. In the last two cases, however, the court found such facts were properly established when viewed with other information relied upon to establish probable cause.

Moreover, the fact that he had previously given information which led to the arrest of a forgery suspect is additional justification for regarding him as a reliable informant. Although this was not so strong a showing as would be the case where the person arrested has been held to answer or convicted, the affidavit contained an explanation that no preliminary hearing or trial had taken place; and the fact that the arrest was made and the charges had not been dismissed would constitute some substantiation of the informant's reliability. [Citations.]" (*Id.*, at pp. 713-714. See also *People* v. *Gray, supra,* 63 Cal.App.3d 282, 288; and cf. *People* v. *Schmidt, supra,* 102 Cal.App.3d 172, 179 [old "track record" will not do].)

In *People* v. *Smith, supra,* 17 Cal.3d 845, the court recognized that the descriptions "citizen informant" and "reliable informant" are both conclusions. It concluded, "In either case the conclusion must be supported by facts stated in the affidavit. [Citations.]" (17 Cal.3d at p. 851.) The court proceeded to analyze the allegations of the affidavit and, finding no evidence of status sufficient to establish reliability, proceeded to examine the alleged facts for corroboration, and found no sufficient facts. If there are other factual details corroborating the declarations of the informant, the declarations and the person uttering them may be considered reliable. (See *People* v. *McCarter, supra,* 117 Cal.App.3d 894, 902 [independent information as to a crime detail not reported by the news media]; and *People* v. *Zepeda, supra,* 102 Cal. App.3d 1, 5 [coincidence of facts reported with dates, amounts and an article involved in burglaries].) So here some weight must be given to the allegation that the informant was knowledgeable in another investigation.[6]

---

[6]At the hearing in the superior court, Officer Guerrero was examined concerning his personal experience with the alleged confidential reliable informant (see fns. 3 and 4 above). He testified that of the three or four times he had received information from the informant, the current matter and one other involved investigations in which the officer was participating. The information in the other investigation was that referred to in the affidavit as already in the possession of this officer, and it was received from the informant about a week prior to April 11, 1980. The officer then had already verified the name, address and phone number of the other suspect and by surveillance ascertained that persons calling at the premises of that suspect customarily went to a phone booth at the corner, made a call and then walked to the premises and were admitted. He further testified that between the time he prepared the affidavit for the search warrant in this case, and the time he swore to it on April 16, 1980, a search warrant was secured and executed on the other suspect's premises, contraband was found and the suspect was arrested. The officer explained that he composed the affidavit in this case over a series of three days and apparently forgot to put in the facts which developed in the other case in the interim. We note, however, that only those facts presented to the magistrate may be considered in determining the reliability of the informant. (*People* v. *Smith, supra,* 17 Cal.3d 845, 852.)

In *People* v. *Cedeno, supra,* 218 Cal.App.2d 213, on which defendant relies, the court stated, "It must be pointed out, however, that the reliability of the informant may be shown not only by past experience with the informant, but also may be substantiated by the proven accuracy of the information given by the informant and which the officers from other sources know is accurate. This substantiation may be supplied by substantial corroborative facts known or discovered. [Citations.]" (218 Cal.App.2d at p. 220.)

The warrant here is not predicated alone on the earlier reports and surveillances made by the police, or on a hearsay statement of facts ascertained out of the presence of the officer who made the affidavit. It is predicated principally on the information received from the informant after the officer, who was by his side, observed the informant call a telephone number known to the officer to be that of the telephone at the defendant's residence, and after the officer overheard the informer carry on a conversation with a person who answered the informant's request to talk to defendant. It does not appear, however, that the conversation was recorded, nor was it monitored except as one individual may overhear a portion of a telephone conversation made in his presence.

Defendant characterizes the information received from the informant at the conclusion of the telephone conversation as just another report from an unreliable informant. (See *People* v. *Hill, supra,* 12 Cal.3d 731, 760-761; *People* v. *Scoma, supra,* 71 Cal.2d 332, 337, 340; *People* v. *Johnson* (1968) 68 Cal.2d 629, 634 [68 Cal.Rptr. 441, 440 P.2d 921]; *People* v. *Reeves* (1964) 61 Cal.2d 268, 273-274 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *West, supra,* 237 Cal.App.2d 801, 807; *People* v. *Cedeno, supra,* 218 Cal.App.2d 213, 221-223; and *Ovalle* v. *Superior Court, supra,* 202 Cal.App.2d 760, 763.) Without determining whether such an unmonitored call would alone sustain probable cause, it is clear that with the other facts alleged in the affidavit, it has more weight than an unreliable tip. The magistrate could construe the affidavit as reflecting that the officer himself knew the number dialed, and he could find, contrary to defendant's present contention, that the officer was close enough to hear that someone had answered the phone and was conversing from the other end of the line in response to questions about marijuana. The magistrate could also consider that the presence of the officer at the eliciting of the alleged damaging statements from someone at defendant's residence made it more probable that the relator was telling the truth. Because of enmity, cupidity, or other devious motives,

an informant readily might give false reports of past criminal activity that could not later be verified. The circumstances have placed the informant in a position where he would have reason to believe that a false report would probably be readily disclosed.

Finally, we note that this is not a mere quantification of accusations by one informant. In evaluating the information received from the alleged confidential informant on April 11, 1980, the trier of fact was entitled to throw in the scales the anonymous reports received in 1979 and the traffic to the premises observed by the officers on November 16, 1979, and on January 22, and 23, 1980. Defendant would apply the axiom that a chain is no stronger than its weakest link. Here, however, there are strands which have been spun into a rope. Although each alone may have insufficient strength, and some strands may be slightly frayed, the test is whether when spun together they will serve to carry the load of upholding the action of the magistrate in issuing the warrant.

Defendant would equate the investigation record in the affidavit with that found inadequate by the court in *Spinelli* v. *United States, supra,* 393 U.S. 410. In that case there was nothing to support the conclusion that the informer was reliable, nor a sufficient statement of the underlying circumstances from which the informer concluded that the suspect was engaged in illegal activity. (*Id.,* at p. 416 [21 L.Ed.2d at p. 644].) The court indicated that the magistrate should "know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." (*Id.*) After examining the evidence of the investigation, the court found "nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." (*Id.,* at p. 418 [21 L.Ed.2d at p. 645].) Here on the other hand, the prior reports and observations were tested with the phone call, and together all sustain the magistrate's action in issuing the warrant.

"The question before us is whether—taking together the allegations based upon the officers' observations and the hearsay statements of the informant—the affidavit as a whole sets forth facts 'such as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain, a strong suspicion of the guilt of the accused.' [Citation.]" (*People* v. *Benjamin, supra,* 71 Cal.2d at p. 302, fn. omitted. See also *People* v. *Castaneda, supra,* 1 Cal.App.3d 477, 482.)

"The warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony. [Citations.]" (*People* v. *Stout* (1967) 66 Cal.2d 184, 193 [57 Cal.Rptr. 152, 424 P.2d 704], accord *People* v. *Benjamin, supra,* 71 Cal.2d at p. 302.) We conclude that the affidavit was sufficient and that the trial court properly denied the motion to suppress. In so finding we apply the standards promulgated in *United States* v. *Ventresca, supra,* 380 U.S. 102, as adopted in *People* v. *Mesa, supra,* 14 Cal.3d 466. "'If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. [¶] ... [T]he courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' (*Id.,* at pp. 108-109 [13 L.Ed.2d at pp. 688-689]; [citation]." (*Id.,* at p. 469.)

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.